Jay M. Wolman (D.C Bar No. 473756)
Marc J. Randazza (*pro hac vice* pending)
RANDAZZA LEGAL GROUP, PLLC
100 Pearl Street, 14th Floor
Hartford, CT 06103
Tel: (702) 420-2001
ecf@randazza.com

*Counsel for Defendants Alex E. Jones, Owen
Shroyer, Free Speech Systems, LLC, and
Infowars, LLC*

## UNITED STATES DISTRICT COURT

## DISTRICT OF COLUMBIA

**DR. JEROME CORSI** and **LARRY
KLAYMAN**,

      Plaintiffs,

      vs.

**INFOWARS, LLC, FREE SPEECH
SYSTEMS, LLC, ALEX E. JONES, DAVID
JONES,** and **OWEN SHROYER**,

      Defendants.

CIVIL ACTION NO. 1:19-cv-00656-ESH

**REPLY IN SUPPORT OF MOTION TO
DISMISS**

    "Why am I here?" is one of life's big questions; importantly, it is the question the Texan

Defendants are asking this Court to answer, when faced with this suit.[1]  The Court lacks personal

jurisdiction over them, and the venue is improper; even if this were not the case, there are no

plausible claims against them by Mr. Klayman or his client, Dr. Corsi.

---

    [1] This reply is filed only on behalf of Defendants Infowars, LLC, Free Speech Systems,
LLC, Alex E. Jones, and Owen Shroyer.  Subsequent to the filing of the original motion, separate
counsel appeared on behalf of Defendant David Jones, who will file a separate reply memorandum
on his behalf.  To the extent applicable, that reply memorandum is incorporated herein by
reference.

**1.0     Personal Jurisdiction is Absent**

Plaintiffs claim that broadcasts that reach into the District of Columbia is business in the district subjecting them to jurisdiction either under D.C. Code § 13-423(a)(1) or (a)(4). *See* Dkt. No. 10 at 7. They also claim that the sale of "tchotchkes" nationwide, including the district, funds speech that occasionally discusses locations in the district, subjecting them to personal jurisdiction. *See id*. at 7-8. Finally, they claim that the indictment of non-party Roger Stone in D.C., for alleged activities entirely separate from the alleged defamation here, warrants personal jurisdiction. *See id*. at 8. Plaintiffs make these same arguments under the Due Process clause, both in support of general and specific jurisdiction. *See id*. at 9-10. None of these arguments make any sense.

These are not "continuous and systematic contacts" warranting general jurisdiction under *Hourani v. PsyberSolutions LLC*, 164 F. Supp. 3d 128, 136-37 (D.D.C. 2016). In *Hourani*, the plaintiffs claimed jurisdiction on the basis of internet broadcasts and publications generally reaching the District. 164 F. Supp. 3d at 134-135. This was insufficient. *See id*. at 137 ("The Court does not have general personal jurisdiction over either man because they do not live or work in the District of Columbia and there are no allegations that they have systematic contacts with the District such that they should reasonably anticipate being sued here."); *see also Daimler AG v. Bauman,* 571 U.S. 117, 137 (2014) ("For an individual, the paradigm forum for the exercise of general jurisdiction is the individual's domicile.") (quoting *Goodyear Dunlop Tires Operations, S.A. v. Brown*, 564 U.S. 915, 924 (2011)). Defendants live in and have their principal places of business in Texas. *See Xie v. Sklover & Company, LLC*, 260 F.Supp.3d 30, 39 (D.D.C. 2017) ("Under D.C. law, there is general jurisdiction over a defendant who is 'domiciled in, organized under the laws of, or maintaining his or its principal place of business in' the District.") (quoting D.C. Code § 13-422). Defendants do not live or work in the District and the alleged contacts, incidentally reaching the District along with the rest of the globe, are not systematic. *See GTE New Media Services, Inc., v. BellSouth Corp.*, 199 F.3d 1343, 1349 (D.C. Cir. 2000) ("[P]ersonal jurisdiction surely cannot be based solely on the ability of District residents to access defendants'

1  websites, for this does not by itself show any persistent course of conduct by the defendants in the

2  District.").

3         Neither is there specific jurisdiction.  "In order for a court to exercise specific jurisdiction

4  over a claim, there must be an affiliation between the forum and the underlying controversy,

5  principally, an activity or an occurrence that takes place in the forum State. When there is no such

6  connection, specific jurisdiction is lacking regardless of the extent of a defendant's unconnected

7  activities in the State." *Bristol-Myers Squibb Co. v. Superior Court*, 137 S. Ct. 1773, 1781 (2017).

8  Defendants did nothing in D.C. related to this dispute.  Neither have Plaintiffs provided the proper

9  required "affidavits and other written materials" to support their claim. *Covey Run v. Washington*

10  *Capital,* 245 F. Supp. 3d 9, 17 (D.D.C. 2017).

11         Corsi and Klayman rely on a case involving Hustler Magazine, but it is distinguishable.  In

12  that case, Hustler was found to have "continuously and deliberately exploited the New Hampshire

13  market[.]" *Keeton v. Hustler Magazine, Inc*., 465 U.S. 770, 781 (1984).[2]  Hustler had "regular

14  monthly sales of thousands of magazines" in New Hampshire.  *Id*. at 774.  Specifically, Hustler's

15  "contacts with New Hampshire consist of the sale of some 10,000 to 15,000 copies of Hustler

16  Magazine in that State each month."  *Id*. at 772.  Plaintiffs make nowhere near the allegations that

17  Defendants transact a similar extent of business as Hustler did in New Hampshire.

18         Further, despite citing to *Hourani*, Plaintiffs appear to have foregone reading it before

19  citing it.  In addressing specific jurisdiction, the Court wrote:

20      A forum may assert specific jurisdiction over an out-of-state defendant who has not
21      consented to suit there so long as "the defendant has purposefully directed his
    activities at residents of the forum, and the litigation results from alleged injuries
22      that arise out of or relate to those activities." *Burger King Corp. v. Rudzewicz*, 471
    U.S. 462, 473, 105 S. Ct. 2174, 85 L. Ed. 2d 528 (1985) (internal citation and
23      quotation marks omitted).

24  
25      [2] Plaintiffs cite *Hustler* in support of general jurisdiction, but it is actually a specific
jurisdiction case.  *See Bristol-Myers Squibb*, 137 S.Ct. at 1782 ("Concluding that specific
26  jurisdiction was present, we relied principally on the connection between the circulation of the
magazine in New Hampshire and damage allegedly caused within the State.")

27  

RANDAZZA · LEGAL GROUP

164 F. Supp. 3d at 137 (D.D.C. 2016).  Plaintiffs are not D.C. residents.  In fact, Mr. Klayman reaffirms and swears he is a Floridian.  *See* Dkt. No. 10-2 at ¶ 2.  Nor are comments about an investigation into a nationwide presidential campaign "purposefully directed" at a district whose 3 electoral college votes were not changed by the alleged collusion.  *See Bauman v. Butowsky*, 2019 U.S. Dist. LEXIS 54507, *10 (D.D.C. Mar. 28, 2019)("There is also no support for the proposition that merely speaking about a forum (or about entities within that forum)—e.g., producing a film about or seeking employment with the federal government, discussing one's relationships with federal government officials—can confer specific jurisdiction in the absence of identifiable forum contacts.")

Moreover, Plaintiffs lump all of the defendants together, attempting to obfuscate the issues. Plaintiffs do not identify what any specific defendant did to subject him or it to this Court's jurisdiction.  Even if one defendant might be subject to this Court's jurisdiction, it does not automatically follow that the rest are.  *Accord Keeton v. Hustler Magazine, Inc.*, 465 U.S. at 781 n.13("In addition to Hustler Magazine, Inc., Larry Flynt, the publisher, editor, and owner of the magazine, and L.F.P., Inc., Hustler's holding company, were named as defendants in the District Court. It does not of course follow from the fact that jurisdiction may be asserted over Hustler Magazine, Inc., that jurisdiction may also be asserted over either of the other defendants.")  In fact, Plaintiffs did not dispute in their opposition that the fiduciary shield doctrine would protect the individual defendants, including Alex Jones and Owen Shroyer, even if a relevant corporate defendant could be found subject to personal jurisdiction in this district.  *Compare Bauman v. Butowsky*, 2019 U.S. Dist. LEXIS 54507 at *12-13 (dismissing for lack of personal jurisdiction where no actions identified in defendant's personal capacity separate from company's alleged contacts).  Nor do Plaintiffs show that the exercise of personal jurisdiction would not "offend traditional notions of fair play and substantial justice." *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945).

Instead, Plaintiffs argue that personal jurisdiction is proper because Defendants are allegedly acting in concert with non-party Roger Stone, who doesn't live here either. *See* Dkt. No. 10 at 8. However, as Plaintiffs should be aware, Mr. Stone is not subject to this Court's personal jurisdiction over the alleged speech at issue. *See* **Exhibit 1**, Motion to Dismiss, *Corsi v. Stone,* Case No. 1:19-cv-00324-TJK (D.D.C. Mar. 6, 2019) (incorporated herein by reference), and **Exhibit 2**, Reply in Support of Motion to Dismiss, *Corsi v. Stone,* Case No. 1:19-cv-00324-TJK (D.D.C. Mar. 27, 2019)(incorporated herein by reference). Moreover, "bald speculation or a conclusory statement that individuals are co-conspirators is insufficient to establish personal jurisdiction under a conspiracy theory." *Jungquist v. Sheikh Sultan Bin Khalifa Al Nahyan*, 115 F.3d 1020, 1031 (1997) (internal quotation marks omitted). Plaintiffs have failed to "plead with particularity the conspiracy as well as the overt acts within the forum taken in furtherance of the conspiracy." *Id*. (internal quotation marks omitted). Though Mr. Stone is being prosecuted in the District for alleged illegal activity he conducted in the District, Plaintiffs do not claim he defamed them from this District. No credible conspiracy occurred in this District, Defendants lacked knowledge of Mr. Stone's activities in the District, and no knowledge has been pled with particularity. *See Cockrum v. Donald J. Trump for President, Inc.*, 319 F. Supp. 3d 158, 186 (D.D.C. 2018); *see also Vasquez v. Whole Foods Market*, 302 F. Supp. 3d 36, 48-49 (D.D.C. 2018) (precluding plaintiffs from aggregating allegations regarding multiple defendants to establish personal jurisdiction). Nor is there anything but rife speculation that a conspiracy exists. Thus, this Court lacks personal jurisdiction over Defendants.

## 2.0   Venue is Improper

A substantial part of the events giving rise to the claims arose in Texas. No part arose in D.C. "Peripheral and tangential events occurring in the district will not establish venue." *Cockrum,* 319 F. Supp. 3d at 190.

Plaintiffs cite to no authority where allegedly targeting a venue through defamation of non-residents who might, one day, enter that venue means that the alleged defamation arose in that

venue.  Rather, the district must bear "the brunt of the alleged injury". *United States Trade Ass'n v. Unidentified Parties,* 2011 U.S. Dist. LEXIS 63606, at *37 (E.D. La. June 15, 2011).  The brunt of the alleged injury would be felt no more in D.C. than in any other random place.  As one court noted, "it is difficult to see how a plaintiff can show in the absence of state-specific targeting that an event actually "occurred" in the state under § 1391(b)(2)." *Poor Boy Prods. v. Fogerty*, 2015 U.S. Dist. LEXIS 113086, at *22 n.2 (D. Nev. Aug. 26, 2015).  To the contrary, and "[m]uch more probably, the Supreme Court would consider internet [postings] to have "occurred" in the state where the offending party sits when he posts them, or perhaps where his servers are located[.]" *Id.*

Neither does the simple availability of the programming on the internet, with no greater targeting of D.C. than of Uzbekistan, make this district a proper venue.  *Compare Equidyne Corp. v. Does 1-21,* 279 F. Supp. 2d 481, 489 (D. Del. 2003) ("posting to message boards on the internet is not sufficient to constitute an act or transaction in Delaware.")  Though Mr. Klayman may prefer filing suit in this forum, even when expressly barred by a contractual forum selection clause, the Court should not indulge his whims.  *Compare Moore, et al. v. Cohen, et al.*, Case No. 1:18-cv-02082-TFH (D.D.C. Apr. 29, 2019) (transferring case improperly filed in this district by Mr. Klayman).  Thus, the matter should be dismissed for improper venue.

**3.0   Plaintiffs' Claims Lack Merit**

There is no reason for this litigation to continue regardless of jurisdiction or venue; the Court should adjudicate these claims for their lack of merit.

**3.1   Defendants Did Not Defame Plaintiffs**

Notwithstanding Plaintiffs' citations to Florida cases, as set forth in *Zimmerman v. Al Jazeera Am., LLC,* these claims may be dismissed at this stage:

> "When confronted with a motion to dismiss [a defamation claim], a court must evaluate '[w]hether a statement is capable of defamatory meaning,'" which is a threshold "question of law[,]" *Jankovic v. Int'l Crisis Grp. (Jankovic I),* 494 F.3d 1080, 1091 (D.C. Cir. 2007) (second alteration in original) (quoting *Weyrich v. New Republic, Inc.,* 235 F.3d 617, 627 (D.C. Cir. 2001)), and must also determine whether the statement is false, *see White v. Fraternal Order of Police,* 909 F.2d

1    512, 520 (D.C. Cir. 1990) ("Defamatory meaning and falsity are distinct elements
     of the tort of defamation and are considered separately.").

2    246 F. Supp. 3d 257, 273 (D.D.C. 2017).  The defamation claims should all be dismissed.

3         First, "bare assertion[s]" of conspiracy are insufficient to find liability on the part of any

4    defendant for the speech of any other person.  *See Ye v. Holder*, 644 F. Supp. 2d 112, 119 (D.D.C.

5    2009) (Huvelle, J.); *see also Flowers v. Executive Off. of Pres*., 142 F. Supp. 2d 38, 47 (D.D.C.

6    2001) (dismissing conspiracy claim where the plaintiff "fail[ed] to allege any facts to support such

7    a claim").  In fact, under D.C. law, "a corporation cannot conspire with its employees, and its

8    employees, when acting in the scope of their employment, cannot conspire among themselves."

9    *Executive Sandwich Shoppe v. Carr Realty Corp*., 749 A.2d 724, 739 (D.C. 2000).

10        Nor is there any basis to suggest Mr. Shroyer is liable for the allegedly defamatory speech

11   of Mr. Stone just because Mr. Stone appeared on a program hosted by Mr. Shroyer.  Plaintiffs cite

12   no authority for this proposition.    To the contrary, "[t]he right to associate does not lose all

13   constitutional protection merely because some members of the group may have participated in

14   conduct or advocated doctrine that itself is not protected." *N.A.A.C.P. v. Claiborne Hardware Co*.,

15   458 U.S. 886, 908 (1992).

16        Second, Plaintiffs are public figures to whom the actual malice standard applies.  Dr. Corsi

17   does not dispute his self-proclaimed "world-renowned" status observed in *Farah v. Esquire*

18   *Magazine*, 736 F.3d 528, 531 (D.C. Cir. 2013).  Neither does Mr. Klayman show that the prior

19   findings that he is a public figure are "context specific", where the findings in those prior cases

20   were general in nature as to his "notoriety and high-profile work in the public realm," *Klayman v.*

21   *Judicial Watch, Inc*., 22 F. Supp. 3d 1240, 1251 (S.D. Fla. 2014), and he ignores his own

22   concession of such status in *Klayman v. City Pages*, 2015 U.S. Dist. LEXIS 49134, at * 39 (M.D.

23   Fla. Apr. 3, 2015).  Plaintiffs even pled themselves as a "nationwide" publisher and a "media

24   personality".  *See* Complaint at ¶¶ 4-5. Mr. Klayman pled his fame, and he cannot now run from

25   his own pleadings nor distinguish multiple cases finding that he is a public figure.

26

27

Reply in Support of Motion to Dismiss
1:19-cv-00656-ESH

Even if Plaintiffs' general public figure status were at issue, there is no legitimate question of voluntary injection into the debate —Exhibit 1 to the Complaint, the indictment of Mr. Stone, which Plaintiffs incorporated by reference in to their complaint, is riddled with Dr. Corsi's willful communications with Mr. Stone.  Mr. Klayman chose to represent Dr. Corsi publicly in relation thereto.  At a minimum, Plaintiffs are public figures, at least for the purposes of this case.

Third, the statements were not made by any of the defendants with actual malice.  Mr. Shroyer made no allegedly defamatory statements at all.  Nor is there any plausible allegation, beyond conclusory allegations of vicarious liability, that the corporate defendants knew any statements were false or aired them in reckless disregard for their truth.  And, as discussed in the motion and below, the statements were otherwise opinion and/or rhetorical hyperbole.

Plaintiffs fail to properly understand that an opinion does not have to be correct to have a foundation.  It does not matter if Dr. Corsi is mentally degraded, had a stroke, appeared able to walk, or not; it would only be actionable if Mr. Jones had not actually observed Dr. Corsi—a factual foundation they do not deny.  Nor do they deny that Dr. Corsi could have *appeared* mentally degraded.  They do not claim that Mr. Jones did not see Dr. Corsi at a steakhouse.  They do not deny staff saw him in the elevator or that the staff thought he was dead and so informed Mr. Jones.  Mr. Jones laid the factual foundation for his protected opinions and those statements are not actionable.

Neither did Mr. Jones call Dr. Corsi a liar; his statement was one of rhetorical hyperbole.  Certainly, no one who heard it thought that the phrase "whatever comes out of his mouth ain't the truth" means that every word said by Dr. Corsi must be false.  Rather, it is more akin to the determination in *Smith v. Clinton* that calling the plaintiffs "wrong" in the press is not defamatory. 253 F. Supp. 3d 222, 241 (D.D.C. 2017).

Similarly, Mr. Stone's January 18 statements are classic rhetorical hyperbole; calling someone a "numbskull" or that they could get the electric chair for the non-capital offense of perjury or that they are a "piece of garbage" does not imply the literal truth of any of those

RANDAZZA · LEGAL GROUP

statements.  Defendants asserted that all of the statements, in context, constituted Mr. Stone's

opinion and rhetoric; none of them were conceded to be actionable.  As summarized by one court:

> whether the language is hyperbolic is relevant to distinguishing fact from opinion. Rhetorical hyperbole—"language that, in context, was obviously understood as an exaggeration, rather than a statement of literal fact"—is not actionable. In particular, "[t]he ad hominem nature of abusive epithets, vulgarities, and profanities," which some writers "use to enliven their prose," indicates that the statement is hyperbole.
>
> Exercises in "name calling" generally fall under the category of rhetorical hyperbole. For example, courts have held that "idiot," "raving idiot," "[i]diots [a]float," and more vulgar variants were rude statements of opinion, rather than lay diagnoses of mental capacity. Similarly, courts have held that statements calling the plaintiff "stupid," a "moron," and a "nincompoop" were not actionable. Courts have also held that statements potentially referring to the plaintiff's mental health, such as "raving maniac" "pitiable lunatics" "wacko," "nut job," and "hysterical" "crazy" and "crank," were statements of opinion.

*Steinhausen v. Homeservices of Neb., Inc.*, 289 Neb. 927, 941-42, 857 N.W.2d 816, 829 (2015)

(citations omitted); *see also Dilworth v. Dudley*, 75 F.3d 307, 310 (7th Cir. 1996) (summarizing

cases that concluding that insults, such as phony, lazy, stupid, and chicken-stealing idiot, lacked

defamatory meaning).  No listener would believe Mr. Stone had access to any IQ test taken by Mr.

Klayman.[3]  Such indicates the overall tenor of the statements as hyperbolic.

There is further no indication that Mr. Jones or Mr. Stone acted with actual malice when

making statements about Plaintiffs, let alone the other defendants passively letting speech be aired.

"[T]he plaintiff must demonstrate that the author 'in fact entertained serious doubts as to the truth

of his publication,' or acted with a 'high degree of awareness of … probable falsity.'" *Masson v.*

*New Yorker Magazine, Inc.*, 501 U.S. 496, 510 (1991) (citations omitted).  As to Mr. Klayman's

separation from Judicial Watch, Plaintiffs are squabbling over a fair interpretation of the judicial

findings.  Allegations were made against Mr. Klayman of an inappropriate relationship, which he

admitted in part.  Judicial Watch requested he resign.  Judicial Watch won the lawsuit.  At a

---

[3] Mr. Klayman's exhibit is not appropriate at this stage of the proceedings; even if it were, the statements remain rhetorical hyperbole.

RANDAZZA · LEGAL GROUP

minimum, it cannot be reckless disregard of the truth for Mr. Stone to come to the same conclusion as a jury, let alone for Defendants to have engaged in actual malice through the broadcasting of his spontaneous utterances.

None of the statements were conceded by omission; there was no omission.  Defendants generally addressed the allegations at paragraphs 65, 66, 67, and 70 in the second paragraph on page 18 of their motion, where they discussed "[t]he remaining allegations" as to the truthfulness of Dr. Corsi's statements.  Plaintiffs ignore that Dr. Corsi's statements that his own "recollections are not always accurate against an objective sense of truth" and that Dr. Corsi is "not maintaining that [his own] recollection is true and [Mr. Stone's] is false." Dkt. No. 7 at 18.  Neither do Plaintiffs deny Dr. Corsi's work with various agencies as true; they rather make a large logical leap that it somehow falsely implies certain communications with the Special Counsel.  Plaintiffs' imagination does not amount to defamation.  Thus, the allegations are not actionable.

### 3.2    Plaintiffs have no Valid Claim for Intentional Infliction of Emotional Distress or Assault

Plaintiffs make the risible claim that Mr. Stone saying that he looks forward to "confrontation" and that he would "demolish" Dr. Corsi suggest that a physical injury was threatened.  The claims for assault and intentional infliction of emotional distress arise from this purported threat – by a non party.  No matter how imposing Plaintiffs claim the 66-year old Roger Stone appears to them, no reasonable person would perceive the statements as anything other than rhetoric.  *Contrast Homan v. Goyal,* 711 A.2d 812 (D.C. 1998) (only finding a claim for intentional infliction of emotional distress after *repeated death* threats and actual physical confrontation).  The circumstances in *Homan* are sorely lacking here.  Neither is the so-called threat immediate to constitute assault, where Mr. Stone was in Florida and Dr. Corsi in New Jersey.  Moreover, even if Mr. Stone could be deemed to have threatened Dr. Corsi with demolition, there is no basis to find any of the Defendants possibly liable for those utterances.  Neither claim can proceed.

### 3.3     Economic Motivation is Not Commercial Speech

Plaintiffs entirely misrepresent the decision in *Tobinick v. Novella,* 848 F.3d 935 (11th Cir. 2017).   In *Tobinick*, the Eleventh Circuit expressly rejected the notion that merely because a defendant might somehow have a downstream pecuniary benefit to speech, it is commercial, saying:

> The Tobinick Appellants describe a complex "funneling" scheme to generate profit for Dr. Novella, in which the Tobinick Appellants claim that the two articles are connected to other websites through hyperlinks in a way that readers are directed to websites that generate revenue for Dr. Novella, such as through advertising or membership subscriptions. This funneling theory, which attempts to connect the articles to revenue sources, relies on such a level of attenuation that it fails to demonstrate economic motivation in the commercial speech context.

848 F.3d at 951.   Plaintiffs' theory is similarly attenuated.   Under Plaintiffs' view, any time a media personality criticizes another, it is *ipso facto* commercial speech because they might compete elsewhere in the market.

That Defendants might earn revenue by airing criticism of Plaintiffs is not determinative. As discussed by the Supreme Court, "[i]f a newspaper's profit motive were determinative, all aspects of its operations -- from the selection of news stories to the choice of editorial position -- would be subject to regulation if it could be established that they were conducted with a view toward increased sales. Such a basis for regulation clearly would be incompatible with the First Amendment." *Pittsburgh Press Co. v. Pittsburgh Com. on Human Relations*, 413 U.S. 376, 385, (1973).  The speech is not commercial by any stretch and the Lanham Act claim must be dismissed.

**4.0      Conclusion**

There is no personal jurisdiction over Defendants.  The District of Columbia is not a proper

venue.  None of the statements are actionable.  This matter should be dismissed with prejudice.

Dated: May 20, 2019.                      Respectfully submitted,

                                          /s/ Jay M. Wolman
                                          Jay M. Wolman
                                          (D.D.C. Bar No. 473756)
                                          RANDAZZA LEGAL GROUP, PLLC
                                          100 Pearl Street, 14th Floor
                                          Hartford, Connecticut 06103
                                          Tel: (702) 420-2001
                                          Email: ecf@randazza.com

                                          Marc J. Randazza
                                          *pro hac vice pending*
                                          RANDAZZA LEGAL GROUP, PLLC
                                          2764 Lake Sahara Drive, Suite 109
                                          Las Vegas, NV 89117
                                          Tel: (702) 420-2001
                                          Email: ecf@randazza.com

                                          *Attorneys for Defendants Alex E. Jones,*
                                          *Owen Shroyer, Free Speech Systems, LLC,*
                                          *and Infowars, LLC*

Civil Action No. 1:19-cv-00656-ESH

**<u>CERTIFICATE OF SERVICE</u>**

I hereby certify that a true and correct copy of the above document was filed and served upon all parties of record on May 20, 2019 by CM/ECF, the court's electronic filing system.

/s/ Jay M. Wolman

Jay M. Wolman

# EXHIBIT 1

Motion to Dismiss, *Corsi v. Stone,* Case No. 1:19-cv-00324-TJK
(D.D.C. Mar. 6, 2019)

## IN THE UNITED STATES DISTRICT COURT FOR THE
## DISTRICT OF COLUMBIA

DR. JEROME CORSI,

       Plaintiff,

v.

ROGER STONE,

       Defendant.

Case No.: 1:19-CV-00324

---

### DEFENDANT ROGER STONE'S MOTION TO DISMISS COMPLAINT

---

L. Peter Farkas
(DDC Bar No. 52944)
HALLORAN FARKAS + KITTILA, LLP
1101 30TH STREET, NW
SUITE 500
WASHINGTON, DC 20007
(202) 559-1700
PF@HFK.LAW

Robert C. Buschel
*Counsel of Record*
*admitted pro hac vice*
(FL Bar No. 0063436)
BUSCHEL GIBBONS , P.A.
ONE FINANCIAL PLAZA – SUITE 1300
100 S.E. THIRD AVENUE
FORT LAUDERDALE, FL 33394
(954) 530-5301
BUSCHEL@BGLAW-PA.COM

*Counsel for Roger Stone*

Defendant Roger Stone respectfully moves that the Court:

1. Dismiss all claims for lack of personal jurisdiction under Rule 12(b)(2);

2. Dismiss all claims for improper venue under Rule 12(b)(3); and

3. Dismiss all claims for failure to state a claim upon which relief can be granted under Rule

   12(b)(6).


Dated: March 6, 2019                                  Respectfully submitted,

                                                      /s/ Robert Buschel

L. Peter Farkas                                       Robert C. Buschel
(DDC Bar No. 52944)                                   *Counsel of Record*
HALLORAN FARKAS + KITTILA, LLP                        *admitted pro hac vice*
1101 30TH STREET, NW                                  (FL Bar No. 0063436)
SUITE 500                                             BUSCHEL GIBBONS , P.A.
WASHINGTON, DC 20007                                  ONE FINANCIAL PLAZA – SUITE 1300
(202) 559-1700                                        100 S.E. THIRD AVENUE
PF@HFK.LAW                                            FORT LAUDERDALE, FL 33394
                                                      (954) 530-5301
                                                      BUSCHEL@BGLAW-PA.COM

                              *Counsel for Roger Stone*

## IN THE UNITED STATES DISTRICT COURT FOR THE
## DISTRICT OF COLUMBIA

DR. JEROME CORSI,

       Plaintiff,

v.

ROGER STONE,

       Defendant.

Case No.: 1:19-CV-00324

---

## MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF DEFENDANT
## ROGER STONE'S MOTION TO DISMISS THE COMPLAINT

---

L. Peter Farkas
(DDC Bar No. 52944)
HALLORAN FARKAS + KITTILA, LLP
1101 30TH STREET, NW
SUITE 500
WASHINGTON, DC 20007
(202) 559-1700
PF@HFK.LAW

Robert C. Buschel
*Counsel of Record*
*admitted pro hac vice*
(FL Bar No. 0063436)
BUSCHEL GIBBONS , P.A.
ONE FINANCIAL PLAZA – SUITE 1300
100 S.E. THIRD AVENUE
FORT LAUDERDALE, FL 33394
(954) 530-5301
BUSCHEL@BGLAW-PA.COM

*Counsel for Roger Stone*

# TABLE OF CONTENTS

**Page**

Table of Authorities ................................................................................................. ii

Introduction ......................................................................................................... 1

Argument ............................................................................................................ 2

I.    The United States District Court for the District of Columbia Lacks Personal
Jurisdiction Over Defendant Stone Pursuant to Federal Rules of Civil
Procedure Rule 12(b)(2), the D.C. Long-Arm Statute, and
Constitutional Due Process Requirements.............................................................2

      A.   Exercising Personal Jurisdiction Would Violate the D.C. Long-Arm Statute.............. 3

      B.   Exercising Personal Jurisdiction Would Violate Defendant Stone's
Due Process Rights.................................................................................... 5

           1.  This Court Does Not Have General Jurisdiction Over Stone ............................... 5

           2.  The Court Does Not Have Specific Jurisdiction Over Stone.................................6

II.   The United States District Court for the District of Columbia is an
Improper Venue for This Lawsuit Pursuant to Federal Rules of Civil
Procedure
Rule 12(b)(3) ....................................................................................................... 8

III.  Plaintiff Fails to State a Claim Upon Which Relief Can Be Granted
(Rule 12(b)(6)) ................................................................................................... 9

      A.   Standard of Review .................................................................................... 9

      B.   Failure to State a Claim as to Defamation, Defamation Per Se, and
Defamation by Implication (Counts I, II, and III)..................................... 11

      C.   Failure to State a Claim for Intentional Infliction of Emotional Distress
Count (IV)................................................................................................16

      D.   Failure to State a Claim as to Assault (Count V) ....................................... 17

Conclusion............................................................................................................ 19

Certificate of Service .......................................................................................... 20

# TABLE OF AUTHORITIES

Page(s)

**CASES**

*Ashcroft v. Iqbal,*
  556 U.S. 662 (2009) .................................................................................................10, 11, 19

Atl. Marine Constr. Co. v. U.S. Dist. Court,
  134 S. Ct. 568 (2013) ..................................................................................................... 8, 9

*Bell Atlantic Corp. v. Twombly,*
  550 U.S. 544 (2007) ..................................................................................................... 10, 11

*Bristol-Myers Squibb Co. v. Superior Court,*
  137 S. Ct. 1773 (2017) ..........................................................................................................6

Bonner v. S-Fer International, Inc.,
  207 F.Supp.3d 19 (D.D.C. 2016) ......................................................................................17

*Burger King Corp. v. Rudzewicz,*
  471 U.S. 462 (1985) ............................................................................................................7

Clyburn v. New World Commc'ns, Inc.,
  903 F.2d 29 (D.C.Cir. 1990…..........................................................................................13

*Cockrum v. Donald J. Trump for President, Inc.,*
  319 F.Supp.3d 158 (D.D.C. 2018)....................................................................................... 5

Conley v. Gibson,
  355 U.S. 41 (1957) ...........................................................................................................10

Crowley v. N. AM. Telecomm. Ass'n,
  691 A.2d 1169 (D.C. 1997)...............................................................................................12

*Daimler AG v. Bauman,*
  134 S. Ct. 746 (2014) ........................................................................................................6

Dingle v. District of Columbia,
  571 F.Supp.2d 87, 98 (D.D.C. 2008) ...............................................................................18

Doe v. Bernabei & Wachtel, PLLC,
  116 A.3d 1262 (D.C. 2015)...............................................................................................17

Etherege v. District of Columbia,
  635 A.2d 908 (D.C. 1993)................................................................................................18

*Fam v. Bank of Am. NA (USA),*
  236 F. Supp. 3d 397 (D.D.C. 2017) .................................................................9

*Ford Transp. Indus., Inc. v. Wilner,*
  760 A.2d 580 (D.C. 2000) ...........................................................................12

*Forras v. Rauf,*
  39 F.Supp.3d 45 (D.D.C. 2014) ...................................................................18

*Franklin v. Pepco Holdings, Inc.,*
  875 F.2d 66 (D.D.C. 2012) ....................................................................12, 13

*Gertz v. Robert Welch, Inc.,*
  418 U.S. 323 (1974) .........................................................................12, 13, 14

*GTE New Media Services Inc. v. BellSouth Corp.,*
  199 F.3d 1343 (D.C. Cir. 2000) ........................................................ 2, 3, 5, 7

*Hournai v. Psybersolutions, LLC,*
  164 F.Supp.3d 128 (D.D.C. 2016) ............................................................4, 6

*Jackson v. District of Columbia,*
  412 A.2d 948 (D.C. 1980) ...........................................................................18

*Jankovic v. Int'l Crisis Group,*
  72 F.Supp.3d 284 (D.D.C. 2014) .................................................................13

*Jankovic v. Int'l Crisis Group,*
  822 F.3d 576 (D.C. Cir. 2016) ...............................................................13, 14

*Jerome Stevens Pharm., Inc. v. Food & Drug Admin.,*
  402 F.3d 1249 (D.C. Cir. 2005) .....................................................................9

*Kendrick v. Fox Tele.,*
  659 A.2d 814 (D.C. 1995) ...........................................................................12

*Klayman v. Stone,*
  Case No. 19-002672 CACE (2019) ...............................................................3

*Kline v. Williams,*
  2006 WL 758459 (D.D.C. 2006) ...................................................................4

*Kowal v. MCI Commc'ns Corp.,*
  16 F.3d 1271 (D.C. Cir. 1994) .....................................................................11

*Lamont v. Haig,*
    590 F.2d 1124 (D.C. Cir. 1978) ...................................................................9

*Lohrenz v. Donnelly,*
    350 F.3d 1272 (D.C. Cir. 2003) .................................................................14

*Madden v. D.C. Transit Sys., Inc.,*
    307 A.2d 756 (D.C. 1973) ..........................................................................18

*Mallinckrodt Medical, Inc.,* v. *Sonus Pharmaceuticals, Inc.,*
    989 F.Supp. 265 (D.D.C. 1998) .................................................................4

*Marsh v. Hollander,*
    339 F. Supp. 2d 1 (D.D.C. 2004) ...............................................................12

*McFarlane v. Esquire Magazine,*
    74 F.3d 1296 (D.C. Cir. 1996) ...................................................................4

*Milkovich v. Lorain Journal Co.,*
    491 U.S. 1 (1990) ......................................................................................12

*New York Times, Co. v. Sullivan,*
    376 U.S. 254, 270 (1964) ...........................................................................14

*Ortberg v. Goldman Sachs Grp.,*
    64 A.3d 158 (D.C. 2013) ............................................................................17

*Papasan v. Allain,*
    478 U.S. 265 (1986) ...................................................................................11

*Pena v. A. Anderson Scott Mortg. Group, Inc.,*
    692 F. Supp. 2d 102 (D.D.C. 2010) ...........................................................10

*Perlmutter v. Varone,*
    59 F.Supp.3d 107 (D.D.C. 2014) ...............................................................9

*Second Amendment Found. v. U.S. Conference of Mayors,*
    274 F.3d 521 (D.C. Cir. 2001) ...................................................................7

*Stovell v. James,*
    810 F.Supp.2d 237 (D.D.C. 2011) .............................................................12

*Swecker v. Midland Power Coop.,*
    253 F.Supp.3d 274 (D.D.C. 2017)) ...........................................................5

*Tavoulareas v. Piro,*
817 F.2d 762 (D.C.Cir.1987) ................................................................. 13, 14

*Trudeau v. Federal Trade Com'n,*
456 F.3d 178 (D.C. Cir. 2006) ...................................................................11

*\*Walden v. Fiore,*
51 U.S. 277 (2014) .....................................................................................7

*Walbaum v. Fairchild Publications, Inc.,*
627 F.2d 1287 (D.C. 1980) ....................................................................... 13

*Washington v. Smith,*
80 F.3d 555 (D.C. Cir. 1996),… ............................................................... 14

*White v. Fraternal Order of Police,*
909 F.2d 512 (D.C. Cir. 1990) .................................................................. 16

*Williams v. District of Columbia,*
9 A.3d 484 (D.C. 2010) ............................................................................ 17

*Wood v. Newman,* 979 A.2d 64, 78 (D.C. 2009) .......................................... 17

*World-Wide Volkswagen Corp. v. Woodson,*
444 U.S. 286 (1980) ............................................................................. 6, 7

*Zhi Chen v. District of Columbia,*
808 F.Supp.2d. 252 (D.D.C. 2011) ........................................................... 18

## STATUTES

28 U.S.C. §1391(b)(2) .....................................................................................9

28 U.S.C. § 1391(b)(3) ....................................................................................9

28 U.S.C. §1406(a) ..........................................................................................8

## OTHER AUTHORITIES

Eric Killelea, *Alex Jones' Mis-Inforwars: 7 Bat-Sh\*t Conspiracy Theories,*
Rolling Stone (Feb. 21, 2017) ................................................................. 16

Dr. Jerome Corsi, *Where's the Birth Certificate? The Case that Barack Obama is not
Eligible to be President* (2016) ............................................................... 1

Jerome Corsi, *North American Union to Replace USA?* (2006) ..................... 1

Jerome R. Corsi, Ph.D., *Hunting Hitler: New Scientific Evidence That Hitler Escaped Nazi Germany* (2014) ........................................................................................................... 1

Jerome R. Corsi, Ph.D., *Silent No More: How I Became a Political Prisoner of Mueller's "Witch Hunt"* (2019) ................................................................................... 15

Joe Miller, *Corsi's Dull Hatchet* (2008) ........................................................................... 1

Rosalind S. Helderman, Manuel Roig-Franzia, and Carol D. Lenning, *Conservative author and Stone associate Jerome Corsi said he expects to be indicted by special counsel for allegedly lying*, The Washington Post (Nov. 12, 2018) ........................................... 15

Search Results for "Corsi" on Politifact ........................................................................... 1

## RULES

D.C. Code Ann. § 13-423… ............................................................................................... 5

D.C. Code Ann. § 13-423(a) .............................................................................................. 3

D.C. Code Ann. § 13-423(a)(4) ....................................................................................... 3, 4

F.R.C.P. Rule 12(b)(2) ...................................................................................................... 1, 3

F.R.C.P. Rule 12(b)(3) ...................................................................................................... 1, 8

F.R.C.P. Rule 12(b)(6) ...................................................................................................... 1,10

# INTRODUCTION

Plaintiff, Jerome Corsi ("Corsi") alleges that Defendant Roger Stone has engaged in defamation, defamation *per se*, defamation by implication, intentional infliction of emotional distress, and assault against him. These allegations do not support even one cause of action. Roger Stone, by trade, is a political pundit and commentator who is well-known for making unconventional and sometimes controversial statements to the media. Likewise, Plaintiff Corsi has based his career on promoting conspiracy theories[1], making outlandish political comments[2], and writing books that are known for their inaccuracies.[3]

Plaintiff fails to provide any legitimate allegations supporting his claim that Mr. Stone attempted to commit "physical violence" against him, an essential element of assault. *See* Complaint ¶ 15. Plaintiff Corsi's allegations are threadbare assumptions of character based on an inaccurate understanding of Mr. Stone's history, personality, and interests. According to Plaintiff Corsi, because Mr. Stone enjoys watching Mafia movies and makes the occasional reference to historical figures, he must be a dangerous man. *See* Complaint ¶ 10. This is absurd. Moreover, Corsi attempts to disparage Mr. Stone's character because he worked for former President Nixon. *Id*. The allegations surrounding Corsi's claim of extreme emotional distress fail to allege the elements of that cause of action. Being a former supporter of a President of the United States and

---

[1] *See* Jerome R. Corsi, Ph.D, <u>Hunting Hitler: New Scientific Evidence That Hitler Escaped Nazi Germany</u>, available at <u>https://www.skyhorsepublishing.com/9781510718647/hunting-hitler/</u>; Dr. Jerome Corsi, <u>Where's the Birth Certificate?: The Case that Barack Obama is not Eligible to be President</u>, 2016, available at <u>https://www.barnesandnoble.com/w/wheres-the-birth-certificate-jerome-r-corsi-phd/1101132037</u>; Jerome Corsi, *North American Union to Replace USA?*, Human Events: Powerful Conservative Voices (May 9, 2006), <u>http://humanevents.com/2006/05/19/north-american-union-to-replace-usa/</u>.

[2] *See*, Search Results for "Corsi," Politicfact, available at <u>https://www.politifact.com/search/?q=corsi</u> – all statements reviewed by politifact have been found to be either 'false' or 'pants on fire' on the politifact truth-o-meter

[3] Joe Miller, *Corsi's Dull Hatchet*, FactCheck.Org, (Sept. 15, 2008), <u>https://www.factcheck.org/2008/09/corsis-dull-hatchet/</u>.

having an interest in the history of the American Mafia does not amount to outrageous conduct

that exceeds all bounds of decency in society.

Why are we in the District Court of the District of Columbia? Plaintiff does not even try to

allege the jurisdictional elements necessary to demonstrate why Roger Stone could be hauled into

Court in this District. He does not live in the District, he does not work in the District, and he did

not make the alleged defamatory statements or assault in the District. Corsi does not even live or

work in the District. This Court does not have personal jurisdiction over Roger Stone, and Plaintiff

and counsel know it.[4] Lastly, not one witness resides in the District, which makes the pleading of

proper venue troublesome as well.

## ARGUMENT

**I.      The United States District Court for the District of Columbia Lacks Personal Jurisdiction Over Defendant Stone Pursuant to Federal Rules of Civil Procedure Rule 12(b)(2), the D.C. Long-Arm Statute, and Constitutional Due Process Requirements**

This Court may exercise personal jurisdiction over Roger Stone only if the Plaintiff satisfies:

*(1)* the D.C. long-arm statute; and, (2) the Due Process Clause. *GTE New Media Services Inc. v.*

*BellSouth Corp.*, 199 F.3d 1343, 1347 (D.C. Cir. 2000). The Plaintiff must satisfy both. *Id.* Plaintiff

satisfies neither. Roger Stone is a non-resident defendant who also is not alleged to have committed

any tort in the District.

### A.   Exercising Personal Jurisdiction Would Violate the D.C. Long-Arm Statute

The D.C. long-arm statute lists a number of grounds for jurisdiction (D.C. Code Ann. § 13-

423(a)); but only one is relevant here, Clause (a)(4). Clause (a)(4) grants the Court jurisdiction

---

[4] Plaintiff's counsel in this case filed a defamation case against Stone in the Seventeenth Judicial Circuit in and for Broward County, Florida in Case No. 19-002672 CACE. Roger Stone is domiciled in Broward County, Florida.

over a defendant who causes "tortious injury in the District" *through an act outside* the District if

he "[i] regularly does or solicits business, [ii] engages in any other persistent course of conduct, or

[iii] derives substantial revenue from goods used or consumed, or services rendered, in the District

of Columbia." (D.C. Code Ann. § 13-423(a) (emphasis added). Furthermore,

> [a] plaintiff seeking to establish jurisdiction over a non-resident under the foregoing
> provisions of the long-arm statute must demonstrate, pursuant to section (a)(1), that the
> plaintiff transacted business in the District, or show, pursuant to section (a)(4), that the
> [person] caused a tortious injury in the District, the injury was caused by the defendant's
> act or omission outside of the District, and the defendant had one of the three enumerated
> contacts with the District.

*GTE New Media Servs.,* 199 F.3d at1347.

The District Court for the District of Columbia has ruled that "[p]ublishing defamatory

statements within the District that were made outside the District does not meet the terms of" D.C.

Code § 13-423(a)(4). *Hourani v. Psybersolutions LLC,* 164 F.Supp.3d 128, 138 (D.D.C. 2016);

*see also McFarlane v. Esquire Magazine*, 74 F.3d 1296 (D.C. Cir. 1996). "*[W]riting* an article for

publication that is circulated throughout the nation, including the District, hardly constitutes doing

or soliciting business, or engaging in in a persistent conduct, *within* the District" and subsequently

does not satisfy the requirements of § 13-423(a)(4). *McFarlane*, 74 F.3d at 1300 (emphasis in

original). Additionally, in a case where a plaintiff alleged defamation when material was posted

on a website, the Court found that "[e]ven though the information on the website could be viewed

by Internet users everywhere, this fact did not create nationwide personal jurisdiction." *Kline v.*

*Williams*, Civ. No. 05-1102(HHK), 2006 WL 758459, at *1 (D.D.C. Mar. 23, 2006). In reviewing

the *Kline* decision, the *Hourani* Court stated that "[t]he critical fact for the determination of

personal jurisdiction was *where* the tortious injury occurred." 164 F.Supp.3d at 139 (emphasis

added). In *Mallinckrodt Medical, Inc.,* v. *Sonus Pharmaceuticals, Inc.*, a plaintiff filed suit because

of a derogatory statement posted to a message board. In that case, the Court found no personal

jurisdiction "because plaintiff neither worked nor lived in the District, the injury felt in the forum was indistinguishable from that felt anywhere AOL subscribers resided." 989 F.Supp. 265, 273 (D.D.C. 1998). Furthermore, "[e]xercising personal jurisdiction in such cases would in essence create a 'nationwide jurisdiction for defamation action' explicitly banned by prior case law." *Kline*, 2006 WL 758459 at *3, (quoting *Mallinckrodt*, 989 F.Supp. at 272)).

Plaintiff Corsi alleges that Mr. Stone caused tortious injury within "this judicial district, nationwide, and worldwide" (*See* Complaint ¶ 31) and "in this district and on the internet and elsewhere, domestically and for the entire world to see and hear." (*See* Complaint ¶¶ 37, 43). However, Stone's alleged tortious conduct did not happen within the District of Columbia. The alleged statements were made to a website, Infowars, which is located in Austin, Texas from Mr. Stone's home in Fort Lauderdale, Florida. Corsi does not claim that he was in District of Columbia when Mr. Stone made the alleged defamatory remarks; nor does he provide any allegation that amounts to the requirements of minimum contacts, purposeful availment, and fairness as required by personal jurisdiction. (Complaint ¶ 3). Plaintiff's complaint also fails to allege that Mr. Stone regularly does or solicits business in Washington D.C., that he derives substantial revenue from goods used or consumed, or services rendered in D.C., or that he engages in any other persistent course of conduct within the District as required under the District of Columbia's long-arm statute. Similarly to *Hourani*, the alleged tortious conduct occurred outside of the District and the alleged tortious injury also occurred outside of the District and as a result this Court does not have personal jurisdiction over Mr. Stone. Mr. Corsi's claims clearly fail to meet the D.C. Long-Arm Statute, based both on the statutory language of D.C. Code § 13-423 and applicable case law as demonstrated above.

## B. Exercising Personal Jurisdiction Would Violate Defendant Stone's Due Process Rights

Even if the long-arm statute is satisfied, Plaintiff must go one step further and satisfy due process requirements that govern a Court's exercise of jurisdiction over defendants. *See GTE*, 199 F.3d at 1347. "To show that the exercise of jurisdiction would comply with the constitutional requirements of due process, a plaintiff must demonstrate that there are 'minimum contacts between the defendant and the forum establishing that the maintenance of the suit does not offend traditional notions of fair play and substantial justice.'" *Cockrum v. Donald J. Trump for President, Inc.,* 319 F.Supp.3d 158, 173 (D.D.C. 2018) (quoting *Swecker v. Midland Power Coop.,* 253 F.Supp.3d 274. 278 (D.D.C. 2017)) (plaintiffs failed to properly allege the District Court of the District of Columbia has personal jurisdiction over Stone). The Due Process Clause authorizes two forms of personal jurisdiction: general and specific. A court with general jurisdiction may hear *any* claim against a defendant, regardless of where the claim arose; a court with specific jurisdiction may only hear claims that arose in the forum. *Bristol-Myers Squibb Co. v. Superior Court*, 137 S. Ct. 1773, 1780 (2017). This Court has neither general nor specific jurisdiction.

### 1. This Court Does Not Have General Jurisdiction Over Stone

General jurisdiction is no factor. "For an individual, the paradigm forum for the exercise of general jurisdiction is the individual's domicile." *Daimler AG v. Bauman*, 134 S. Ct. 746, 760 (2014) (citations omitted). "A court may exercise general personal jurisdiction in this district where the defendant is domiciled in or has his principal place of business in the District of Columbia or where defendant's conduct and connection with the forum are such that he should reasonably anticipate being sued here." *Hourani,* 164 F.Supp.3d 128 at 137 [paraphrasing *World- Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286 (1980)]. Furthermore, "[b]are allegations and conclusory statements are insufficient." *Hourani*, 164 F.Supp.3d at 135.

5

In this case, the Court does not have general personal jurisdiction over Mr. Stone because he is does not live or work in the District, nor has Corsi demonstrated that Mr. Stone has systematic contacts with the District that would allow him to reasonably anticipated being sued in this Court. *See id.* at 137 (the Court found no general personal jurisdiction over the defendants because "they do not live or work in the District of Columbia and there are no allegations that they have systematic contacts with the District such that they should reasonably anticipate being sued here"). Mr. Stone is a resident of the state of Florida; consequently Mr. Stone is domiciled in Florida. Moreover, Florida is the location of his principal place of business and has no discernable ties to D.C. that would satisfy general jurisdiction requirements. This Court, therefore, does not have general jurisdiction over Mr. Stone.

### 2. The Court Does Not Have Specific Jurisdiction Over Stone

This leaves specific jurisdiction. "The inquiry whether a forum State may assert specific jurisdiction over a nonresident defendant focuses on the relationship among the defendant, the forum, and the litigation." *Walden v. Fiore*, 51 U.S. 277, 284-285 (2014) (citations omitted) (internal quotation marks omitted). A court has specific jurisdiction only if (1) the defendant has "purposefully established minimum contacts" with the forum by "purposefully direct[ing]" his activities there and (2) the plaintiff's claims "arise out of or relate to" those activities. *Burger King Corp. v. Rudzewicz*, 471 U.S. 462 (1985). Plaintiff must allege specific acts connecting a defendant to the forum. *See Second Amendment Found. v. U.S. Conference of Mayors,* 274 F.3d 521, 525 (D.C. Cir. 2001).

Pursuant to the "minimum contacts" standard, "courts must insure that 'the defendant's conduct and connection with the forum State are such that he should reasonably anticipate being hauled into court there.'" *GTE,* 199 F.3d at 1347 quoting *World-Wide Volkswagen Corp. v.*

*Woodson*, 44 U.S. at 297. A "defendant's contacts with the forum State may be intertwined with his transactions or interactions with the plaintiff or other parties. But a defendant's relationship with a plaintiff or third-party, standing alone, is an insufficient basis for jurisdiction." *Walden*, 571 U.S. at 286. "Due process requires that a defendant be haled into court in a forum State based on his own affiliation with the State, not based on the 'random, fortuitous, or attenuated' contacts he makes by interacting with other persons affiliated with the State." *Id.*, (quoting *Burger King*, 471 U.S. at 475)).

Mr. Stone does not have minimum contacts with the District of Columbia because he has not purposefully availed him of the protections and benefits of the District, nor was it foreseeable that Mr. Stone's alleged conduct would have resulted in him being sued in the District. Corsi is attempting to pervert the protections of the minimum contacts standard by alleging highly attenuated potential contact with the forum state. Mr. Corsi's attempt to sue Mr. Stone in the District of Columbia is clearly anathema to the principals of personal jurisdiction and he has clearly failed to establish that the Court has any form of personal jurisdiction over Mr. Stone.

Furthermore, Plaintiff attempts to hold Mr. Stone accountable for the potential conduct or statements made by so-called and unnamed "surrogates." Complaint ¶ 13. This is clearly a feeble and erroneous attempt to haul Mr. Stone to court in this District without sufficient contacts. Corsi fails to point to a legitimate and actual instance of Mr. Stone either using or employing surrogates to act on his behalf, he merely mentions individuals with whom Mr. Stone has interacted and worked with in the past. Complaint ¶ 13. Moreover, Corsi fails to demonstrate that these mysterious "surrogates" have any ties or contacts with this District.

**II.**     **The United States District Court for the District of Columbia is an Improper Venue for This Lawsuit Pursuant to Federal Rules of Civil Procedure Rule 12(b)(3)**

Rule 12(b)(3) of the Federal Rules of Civil Procedure authorizes a party to move to dismiss a case for "improper venue." Similarly, the federal venue statute, 28 U.S.C. § 1406(a), requires that a district court "dismiss, or if it be in the interest of justice, transfer" a case, which is filed "in the wrong division or district." 28 U.S.C. § 1406(a). Together, "Section 1406(a) and Rule 12(b)(3) allow dismissal only when venue is 'wrong' or 'improper'... in the forum in which [the case] was brought." *Atl. Marine Constr. Co. v. U.S. Dist. Court,* 134 S. Ct. 568, 573 (2013). "Whether venue is 'wrong' or 'improper' depends exclusively on whether the court in which the case was brought satisfies the requirements of federal venue laws, " *Id.*at 578. *See also Fam v. Bank of Am. NA (USA)*, 236 F. Supp. 3d 397, 405 (D.D.C. 2017).

The moving party objecting to the venue must provide sufficient specificity to advise Plaintiff of the defect. *Id.* Once Plaintiff is on notice of the defect, the burden shifts to him to establish that venue is proper. *Id.* (citations omitted). When assessing the motion for improper venue, the court should accept Plaintiff's well-pled factual allegations regarding venue. *Id.* (citations omitted). On the other hand, the Court should not accept Plaintiff's legal conclusions as true and may consider material outside the pleadings. *Id.* at 406 (citing *Jerome Stevens Pharm., Inc. v. Food & Drug Admin.,* 402 F.3d 1249, 1253 (D.C. Cir. 2005)) (other citations omitted).

Under 28 U.S.C. § 1391(b)(3), venue is proper "if there is no district in which an action may otherwise be brought as provided in this section, any judicial district in which any defendant is subject to the court's personal jurisdiction with respect to such action." Venue is proper in "a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred, or a substantial part of property that is the subject of the action is situated." 28 U.S.C. § 1391(b)(2). "The 'substantial part' requires the plaintiff to "show that a considerable portion of the

8

events took place in their chosen forum." *Perlmutter v. Varone*, 59 F.Supp.3d 107,110 (D.D.C. 2014). Furthermore, "[i]n determining whether the 'substantial part' requirement is met, courts should undertake a 'commonsense appraisal' of the 'events having operative significant in the case.'" *Id.* at 111, (quoting *Lamont v. Haig*, 590 F.2d 1124, 1134 & n. 62 (D.C. Cir. 1978)).

Plaintiff claims that venue is proper under 28 U.S.C. §§ 1391(b)(2), (3) because "a substantial part of the events or omissions giving rise to Plaintiff Corsi's claims arose herein." (Complaint ¶ 2). This is fundamentally incorrect. None of the alleged conduct occurred in Washington D.C., plain and simple. There is nothing contained in Corsi's allegations that even remotely connect Mr. Stone's alleged conduct to the events giving rise to this Complaint.

As this Court lacks personal jurisdiction over Mr. Stone in this matter, Corsi's claims that venue is proper are wrong. The only appropriate venue for this claim would be the Southern District of Florida, which is the district in which Mr. Stone resides. However, this motion should be dismissed for additional reasons and not just due to improper venue.

### III. Plaintiff Fails to State A Claim Upon Which Relief Can Be Granted (Rule 12(b)(6))

#### A. Standard of Review

Until the Supreme Court's decision in *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007), courts routinely followed the rule that, "a complaint should not be dismissed for failure to state a claim unless it appears beyond a doubt that the plaintiff could prove no set of facts in support of his claim which would entitle him to relief." *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957). However, pursuant to *Twombly*, to survive a motion to dismiss, a complaint must now contain factual allegations which are "enough to raise a right to relief above the speculative level . . . on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." *Twombly*, 550 U.S. at 555. "While a complaint attacked by a Rule 12(b)(6) motion to dismiss does

9

not need detailed factual allegations . . . a plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Id.* In all, determining whether a complaint states a plausible claim for relief will "be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Ashcroft v. Iqbal*, 556 U.S. 662 (2009); *see also Pena v. A. Anderson Scott Mortg. Group, Inc.,* 692 F. Supp. 2d 102, 106 (D.D.C. 2010). Second, the court must determine whether the well-pled factual allegations, if assumed to be true, "plausibly give rise to an entitlement to relief." *Iqbal,* 556 U.S. at 662. When the factual allegations are "not only compatible with, but indeed [are] more likely explained by" lawful activity, the complaint must be dismissed. *Id.* at 663.

A complaint must be dismissed if it consists only of "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements." *Id.* at 678. The plausibility standard "asks for more than a sheer possibility that a defendant has acted unlawfully." *Iqbal*, 556 U.S. at 678. Thus, "[f]actual allegations must be enough to raise a right to relief above the speculative level, on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." *Twombly*, 550 U.S. at 555. The court is not "'bound to accept as true a legal conclusion couched as a factual allegation,' or to 'accept inferences drawn by plaintiff if such interferences are unsupported by the facts set out in the complaint.'" *Trudeau v. Federal Trade Com'n*, 456 F.3d 178, 193 (D.C. Cir. 2006) (internal citations omitted) (quoting *Papasan v. Allain*, 478 U.S. 265, 286 (1986)); *Kowal v. MCI Commc'ns Corp.,* 16 F.3d 1271, 1276 (D.C. Cir. 1994).

Applying the *Iqbal* standard in this case, it is abundantly clear that the Plaintiff's allegations of defamation, defamation *per se*, defamation by implication, and intentional infliction of emotional distress fall short in crossing the line from "conceivable" to the "plausible" as Corsi

10

alleges unfounded and conclusory claims unsupported by facts. Indeed, Corsi's Complaint is riddled with outlandish and groundless accusations against Mr. Stone. One of the most implausible claims against Mr. Stone is that his alleged conduct is purposefully and strategically orchestrated to give Plaintiff "heart attacks and strokes." Complaint ¶ 10. This outrageous claim has not been supported by any plausible allegations made in Plaintiff's Complaint, nor has Plaintiff described a single instance that would lend support to this claim. As discussed below, the allegations are implausible because they do not provide any legitimate basis of the claims asserted, they rely on an assumption of guilt based on an on-going criminal prosecution, and misconstrue statements made about non-party individuals as the basis of threats made to Corsi.

**B. Failure to State a Claim as to Defamation, Defamation Per Se, and Defamation by Implication (Counts I, II, and III)**

To state a claim for defamation under District of Columbia law, a Plaintiff must allege sufficient facts showing:

> (1) that the defendant made a false and defamatory statement concerning the plaintiff; (2) that the defendant published the statement without privilege to a third party; (3) that the defendant's fault in publishing the statement amounts to at least negligence; and (4) either that the statement is actionable as a matter of law irrespective of special harm, or that its publication caused the plaintiff special harm.

*Marsh v. Hollander*, 339 F. Supp. 2d 1, 5 (D.D.C. 2004) (quoting *Crowley v. N. AM. Telecomm. Ass'n*, 691 A.2d 1169, 1172 n.2 (D.C. 1997)).

"[I]n a defamation case the plaintiff has the burden of proving that the challenged statements are both false and defamatory." *Kendrick v. Fox Tele.,* 659 A.2d 814, 819 (D.C. 1995). Additionally, a plaintiff asserting a defamation claim "must specifically 'plead the time, place, content, speaker, and listener of the alleged defamatory matter.'" *Franklin v. Pepco Holdings, Inc.,* 875 F.2d 66, 75 (D.D.C. 2012), (quoting *Stovell v. James,* 810 F.Supp.2d 237, 248 (D.D.C. 2011)). The Supreme Court has noted "'imaginative expression' and 'rhetorical hyperbole' are not actionable in defamation because 'they cannot reasonably be interpreted as stating actual facts about an

11

individual.'" *Ford Transp. Indus., Inc. v. Wilner*, 760 A.2d 580, 596-7 (D.C. 2000), (quoting

*Milkovich v. Lorain Journal Co.*, 491 U.S. 1, 2 (1990)).

Defamation is not a one-size-fits-all claim. There are different standards used to view

defamatory statements depending on whether the individual alleging defamation is a full public

figure, a limited public figure, or a private individual. [5] As discussed below and based on the

language used by Plaintiff Corsi himself, it appears that Corsi views himself as a limited public

figure. (*See* Complaint ¶ 3). The District of Columbia Circuit has formulated a three-pong test to

determine whether an individual is a limited-purpose public figure:

> First, the Court must determine whether a public controversy existed. This assessment
> requires the Court to determine whether there was a dispute that in fact had received public
> attention because its ramifications would be felt by persons who were not direct
> participants. Second, the Court must analyze the plaintiff's role in the controversy. Trivial
> or tangential participation is not enough…to be considered a limited-purpose public figure,
> a plaintiff must have achieved special prominence in the debate. To satisfy the special
> prominence requirement, the plaintiff either must have been purposely trying to influence
> the outcome or could realistically have been expected, because of his position in the
> controversy, to have an impact on its resolution. Finally, the Court must assess whether the
> alleged defamation was germane to the plaintiff's participation in the controversy.

*Jankovic v. Int'l Crisis Group*, 72 F.Supp.3d 284, 301 (D.D.C. 2014) [internal citations omitted].

In assessing the first prong, a public controversy exists when "the issue was being debated publicly

and if it had foreseeable and substantial ramifications for nonparticipants, it was a public

controversy." *Walbaum v. Fairchild Publications, Inc.,* 627 F.2d 1287, 1297 (D.C. 1980). A

plaintiff meets the second prong of the limited-public figure test when he "use[s] the public

---

[5] "There are two types of public figures: (1) general public figures who maintain such status for all purposes and (2) limited-purpose public figures "'(who) voluntarily inject[ ] [themselves] or [are] drawn into a particular public controversy and therefore become[ ] ... public figure[s] for a limited range of issues." ' *Id.* at 1292 (quoting *Gertz v. Robert Welch, Inc.,* 418 U.S. 323, 351, 94 S. Ct. 2997, 41 L.Ed.2d 789 (1974)). "A person becomes a general purpose public figure only if he or she is 'a well-known celebrity,' his name a 'household word.'" *Tavoulareas v. Piro,* 817 F.2d 762, 772 (D.C.Cir.1987) (en banc) (citation omitted). "Few people," however, "attain the general notoriety that would make them public figures for all purposes." *Waldbaum,* 627 F.2d at 1296. Much more common are "public figures for the more limited purpose of certain issues or situations." *Tavoulareas,* 817 F.2d at 772. *Jankovic v. Int'l Crisis Group,* 72 F. Supp. 3d 284, 300 (D.D.C. 2014), *aff'd,* 822 F.3d 576 (D.C. Cir. 2016).

controversy to do more than provide a 'short-simple statement of his view of the story,' and instead '[draws] attention to himself' and use[s] 'his position in the controversy as a fulcrum to create public discussion.'" *Jankovic,* 72 F.Supp.3d at 271, quoting *Clyburn v. New World Commc'ns, Inc.,* 903 F.2d 29, 32 (D.C.Cir. 1990). As to the final prong, "'[m]isstatements wholly unrelated to the controversy' are not protected, but statements, including those highlighting a plaintiff's talents, education, experience, and motives,' can be germane." *Id.* at 272, quoting *Walbaum.,* 627 F.2d at 1298. The cornerstone of this inquiry is "whether an individual has assumed [a] role [] of especial prominence in the affairs of society…[that] invite[s] attention and comment." *Lohrenz v. Donnelly,* 350 F.3d 1272, 1279 (D.C. Cir. 2003) (quoting *Tavoulareas v. Piro,* 817 F.2d 762, 773 (D.C. Cir. 1987)). Private individuals become limited-purpose public figures when they have "thrust themselves to the forefront of particular public controversies in order to influence the resolution of the issues involved." *Gertz v. Robert Welch, Inc.,* 418 U.S. 323, 345 (1974).

> The Court set the dividing line between public and private figures based on those who assumed the risk of publicity and had access to channels of communication to defend themselves, and those who did not. Indeed, *the communications media are entitled to act on the assumption that public officials and public figures have voluntarily exposed themselves to increased risk of injury from defamatory falsehood concerning them* whereas a private individual has relinquished no part of his interest in the protection of his own good name, and consequently he has a more compelling call on the courts for redress of injury inflicted by defamatory falsehood.

*Jankovic v, Int'l Crisis Group,* 822 F.3d 576, 584-585 (D.C. 2016) (internal citations and quotations omitted) (emphasis added).

The First Amendment requires that there be a high bar for public figures to prevail on a defamation claim. *See New York Times, Co. v. Sullivan*, 376 U.S. 254, 270 (1964). "A statement of opinion is actionable only if it has an explicit or implicit factual foundation and is therefore 'objectively verifiable.'" *Washington v. Smith*, 80 F.3d 555, 556 (D.C.Cir. 1996), quoting *Milkovich,* 497 U.S. at 22.

The statements made by Mr. Stone do not amount to defamation primarily because Mr. Corsi is a limited-public figure. The public controversy in this case involves the Office of Special Counsel, Robert Mueller's investigation into possible Russian interference in the 2016 Presidential election. This investigation is wide-ranging and has ramifications far beyond just the individuals being investigated, but also for the nation as a whole. All of the alleged claims of Corsi's Complaint center around the larger public controversy surrounding Mueller's Russia investigation. As to the second prong, Corsi has made multiple public statements regarding his and Mr. Stone's involvement in the Mueller investigation, statements that are not a 'short-simple statement of his view of the story,' in fact, he has written a book publicly discussing his involvement in Mueller's investigation, including Corsi's involvement as it relates to Mr. Stone.[6] The alleged defamatory statements are germane to the Plaintiff's involvement in this public controversy. These purported defamatory statements made by Mr. Stone were made in response to Plaintiff Corsi's continuing commentary about his and Mr. Stone's involvement in Mueller's investigation, commentary by Corsi which is disputed by Mr. Stone as false. As a result, Corsi has satisfied the limited-public figure test and consequently, Mr. Stone's comments to not amount to defamation.

Corsi claims that statements made by Stone reach the level of defamation of character. However, this is categorically false. One of Corsi's biggest complaints is that Mr. Stone made "malicious, false, misleading, and defamatory statements" about Corsi, in particular that Corsi had committed perjury. *See* Complaint ¶¶ 18, 20, 23, 25, 27, 29, 39, and 45. There is nothing false or misleading about Mr. Stone stating that Corsi committed perjury – Corsi himself told reporters on November 12, 2018 that the Office of the Special Counsel was planning to indict him for

---

[6] Jerome R. Corsi, Ph.D., <u>Silent No More: How I Became a Political Prisoner of Mueller's "Witch Hunt,"</u> (2019), available at <u>https://www.simonandschuster.com/books/Silent-No-More/Jerome-R-Corsi/9781642932171</u>.

committing perjury.[7] He went so far as to release the statement of facts to his plea agreement. (Exhibit – 1) (publicly available drafts of plea and facts). There is no merit to Corsi's argument that these statements have "severely harmed and damaged" Corsi by subjecting him to "hatred, distrust, ridicule, contempt, and disgrace." *See* Complaint ¶ 32. Mr. Stone was merely repeating what Corsi himself published to the world.

Corsi also attempts to rely on statements Mr. Stone made during several interviews with the website InfoWars, which is well known to be a hub of exceedingly controversial opinions and theories.[8] InfoWars is essentially built on the 'shock factor' and the attention it receives for having outspoken and controversial figures talk about any number of issues. Mr. Stone has created a career on rocking the boat, but this does not amount to defamation. There is nothing contained in Mr. Corsi's allegations that demonstrate that any of the allegedly defamatory statements were made with malice and with the knowledge that they were false and misleading. Mr. Stone is an individual who is well known to speak his mind and share his personal views and opinions based on his personal knowledge and beliefs. This is not defamation.

Furthermore, Plaintiff attempts to attribute statements made by third parties to Mr. Stone in an attempt to bolster his lackluster allegations of defamation. Plaintiff Corsi fails to provide a single instance of Mr. Stone employing and directing these alleged "surrogates" to make defamatory statements about Plaintiff in his complaint. *See* Complaint ¶ 13.

In the District of Columbia, a statement is deemed defamatory *per se* "if it is so likely to cause degrading injury to the subject's reputation that proof of harm is not required to recover

---

[7] Rosalind S. Helderman, Manuel Roig-Franzia, and Carol D. Lenning, *Conservative author and Stone associate Jerome Corsi said he expects to be indicted by special counsel for allegedly lying*, The Washington Post (Nov. 12, 2018), https://www.washingtonpost.com/politics/conservative-author-and-stone-associate-jerome-corsi-said-special-prosecutors-plan-to-indict-him-for-allegedly-lying/2018/11/12/773e6722-e6c7-11e8-a939-9469f1166f9d_story.html?noredirect=on&utm_term=.395c908f58a1.

[8] Eric Killelea, *Alex Jones' Mis-Inforwars: 7 Bat-Sh*t Conspiracy Theories*, Rolling Stone (Feb. 21, 2017).

compensation." *Franklin,* 875 F.Supp.2d at 75. "A defamation by implication…is not treated any differently than a direct defamation once the publication has been found capable of a defamatory meaning. A defendant may escape liability if the defamatory meaning is established as true or as constitutionally protected expression." *White v. Fraternal Order of Police*, 909 F.2d 512, 523 (D.C. Cir. 1990). As stated above, because Corsi is a limited-public figure, statements regarding his talents, education, experience, and motive are essentially fair game, and are the areas that Mr. Stone's comments relate to.

### C. Failure to State a Claim for Intentional Infliction of Emotional Distress (Count IV)

As to intentional infliction of emotional distress, "a plaintiff must show (1) extreme and outrageous conduct on the part of the defendant which (2) intentionally or recklessly (3) causes the plaintiff [to suffer] severe emotional distress." *Doe v. Bernabei & Wachtel, PLLC*, 116 A.3d 1262, 1269 (D.C. 2015) (citing *Ortberg v. Goldman Sachs Grp.,* 64 A.3d 158, 163 (D.C. 2013)) (brackets in original). *See id.* "To survive a motion to dismiss," a plaintiff must allege conduct that was "so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community." *Id.* (citing *Williams v. District of Columbia,* 9 A.3d 484, 494 (D.C. 2010)).

> The standard for "extreme and outrageous conduct" is exceptionally demanding. Conduct is considered 'extreme and outrageous' when it is so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized society. **[M]ere insults, indignities, threats, annoyances, petty oppressions, or other trivialities are not sufficient.**

*Bonner v. S-Fer International, Inc.,* 207 F.Supp.3d 19, 25 (D.D.C. 2016) (internal citations omitted) (emphasis added).

In *Wood v. Newman*, the D.C. Court of Appeals found that the defendant's conduct was not sufficiently severe as to rise to the level necessary for a finding of intentional infliction of emotional distress. The plaintiff described that the defendant's actions left her "horrified,"

"shaken," "embarrassed," "constantly crying," and "almost sleepless," yet this did not amount severe distress as required by the tort. *Wood v. Newman*, 979 A.2d 64, 78 (D.C. 2009).

Plaintiff fails to sufficiently plead Mr. Stone's conduct was so extreme or outrageous as to go beyond the bounds of decency in a civilized society. Corsi does not provide any context that would allow anyone to find Mr. Stone's conduct to rise to the level of conduct so extreme and outrageous as to be beyond the bounds of all decency, let alone a heart attack or stroke. *See* Complaint ¶¶ 48-51. Indeed, Corsi does not mention any specific threat made by Mr. Stone towards him; he relies on an invalid and overly tenuous connection to an apparent threat made by Stone towards a non-party individual who is not involved in this matter whatsoever. *See* Complaint ¶¶ 48-51. His allegations are mere recitations of the elements of the tort of intentional infliction of emotional distress and do not meet the plausibility standard required for his Complaint to survive this Motion to Dismiss.

### D. Failure to State a Claim as to Assault (Count V)

In the District of Columbia, "[c]laims for assault must involve 'an intentional and unlawful attempt or threat, either by words or by acts, to do physical harm to the victim.'" *Dingle v. District of Columbia*, 571 F.Supp.2d 87, 98 (D.D.C. 2008) quoting *Etheredge v. District of Columbia*, 635 A.2d 908, 916 (D.C. 1993). "An actor will not be held liable for assault for negligent or reckless behavior lacking the requisite intent to commit an assault." *Forras v. Rauf*, 39 F.Supp.3d 45, 56 (D.D.C. 2014), *aff'd on other grounds,* 812 F.3d 1102 (D.C. Cir. 2016), *see also Jackson v. District of Columbia*, 412 A.2d 948, 955 n. 15 (D.C. 1980). "Also, 'an essential element of ... assault is ... intentional[ly] putting another in apprehension' and absent such an allegation a complaint is 'clearly deficient.' *Id.* (quoting *Madden v. D.C. Transit Sys., Inc.,* 307 A.2d 756, 757 (D.C. 1973).

In *Zhi Chen v. District of Columbia*, 808 F.Supp.2d. 252, 258-9 (D.D.C. 2011), the Court dismissed the plaintiff's assault claim because she failed "to point to any record evidence indicating that Officer Ha ever attempted or threated to harm Ms. Chen physically. Ms. Chen's failure to identify such evidence is fatal to her assault claim."

Here, Plaintiff Corsi's allegation of assault merely contains "threadbare recitals of the elements" of assault and is only supported by "mere conclusory statements" (*Iqbal*, 556 U.S. at 663) and as a result does not meet the plausibility standard required. Corsi has not alleged any specific attempts made by Mr. Stone to intentionally attempt to or actually to threaten him with physical violence that would cause Corsi to be in a state of reasonable apprehension of harm. Indeed, his statements are clearly conclusory; his allegation of assault, besides reciting the elements, only states that Mr. Stone has been "coercing and threatening Plaintiff Corsi" (Complaint ¶ 53) by claiming that Mr. Stone's statements, "I look forward to our confrontation. I will demolish you" are capable of being viewed as a threat directed towards Mr. Corsi and that these words must be construed as such because a separate and unrelated criminal complaint has been filed against him. (Complaint ¶ 28). Mr. Stone has not been found guilty of those criminal charges and Corsi's use of on-going investigations against Mr. Stone is clearly conclusory as the allegations have not been proven against him.

Mr. Corsi lives in New Jersey and Mr. Stone lives in Florida; they are located thousands of miles from each other, and there is no concrete factual allegation that Mr. Stone has come anywhere near Corsi's person that would reasonably cause him apprehension of physical harm, nor is there any statement by Mr. Stone directed at Corsi that would indicate an intention to cause him harm. This is not an allegation that includes "well-pled factual allegations" that would "plausibly give rise to an entitled to relief" *Iqbal*, 556 U.S. at 662; it is the exact opposite.

18

## <u>CONCLUSION</u>

The Court should dismiss the complaint for lack of personal jurisdiction and improper venue. Alternatively, it should dismiss the complaint for failure to state a claim.

Dated: March 6, 2019                      Respectfully submitted,

/s/ Robert Buschel

L. Peter Farkas                           Robert C. Buschel
(DDC Bar No. 52944)                       *Counsel of Record*
HALLORAN FARKAS + KITTILA, LLP            *admitted pro hac vice*
1101 30TH STREET, NW                      (FL Bar No. 0063436)
SUITE 500                                 BUSCHEL GIBBONS , P.A.
WASHINGTON, DC 20007                      ONE FINANCIAL PLAZA – SUITE 1300
(202) 559-1700                            100 S.E. THIRD AVENUE
PF@HFK.LAW                                FORT LAUDERDALE, FL 33394
                                          (954) 530-5301
                                          BUSCHEL@BGLAW-PA.COM

*Counsel for Roger Stone*

19

**CERTIFICATE OF SERVICE**

I certify that on March 6, 2019, I electronically filed the foregoing with the Clerk of Court

using the CM/ECF system, which will send a notice of electronic filing to all registered parties.

/s/ Robert Buschel
Robert C. Buschel
*Counsel for Roger Stone*

# EXHIBIT 2

Reply in Support of Motion to Dismiss, *Corsi v. Stone,* Case No.
1:19-cv-00324-TJK (D.D.C. Mar. 27, 2019)

# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

DR. JEROME CORSI,

       *Plaintiff*,

v.

ROGER J. STONE, JR.,

       *Defendant*.

Case No.: 1:19-CV-00324

---

## DEFENDANT ROGER STONE'S REPLY TO PLAINTIFF'S OPPOSITION TO DEFENDANT'S MOTION TO DISMISS

---

L. Peter Farkas
(DDC Bar No. 52944)
HALLORAN FARKAS + KITTILA LLP
1101 30TH STREET, NW
SUITE 500
WASHINGTON, DC 20007
(202) 559-1700
PF@HFK.LAW

Robert C. Buschel
*Counsel of Record*
*admitted pro hac vice*
(FL Bar No. 0063436)
BUSCHEL GIBBONS , P.A.
ONE FINANCIAL PLAZA – SUITE 1300
100 S.E. THIRD AVENUE
FORT LAUDERDALE, FL 33394
(954) 530-5301
BUSCHEL@BGLAW-PA.COM

*Counsel for Roger Stone*

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ......................................................................................................... ii

PRELIMINARY STATEMENT ...................................................................................................1

REPLY ARGUMENT ...................................................................................................................2

I.     The United States District Court for the District of Columbia Lacks
Personal Jurisdiction over Defendant Stone Under Federal Rule of Civil
Procedure 12(b)(2), the D.C. Long-Arm Statute, and Constitutional Due
Process Requirements .........................................................................................................2

     A.  The D.C. Long-Arm Statute Has Not Been Satisfied ...................................................3

     B.  Due Process Requirements Have Not Been Satisfied....................................................6

        1.  This Court Does Not Have General Jurisdiction over Stone................................8

        2.  This Court Does Not Have Specific Jurisdiction over Stone ...............................9

II.    The United States District Court for the District of Columbia Is An
Improper Venue for this Lawsuit Pursuant to Federal Rule of Civil
Procedure 12(b)(3) .............................................................................................................9

III.   Plaintiff Fails to State a Claim Upon Which Relief Can Be Granted
Pursuant to Federal Rule of Civil Procedure 12(b)(6) .....................................................10

     A.  Failure to State a Claim as to Defamation, Defamation *Per Se*, and
Defamation by Implication (Counts I, II, and III) ......................................................10

     B.  Failure to State a Claim for Intentional Infliction of Emotional
Distress (Count IV)....................................................................................................12

     C.  Failure to State a Claim as to Assault (Count V)........................................................13

CONCLUSION............................................................................................................................14

CERTIFICATE OF SERVICE………………………………………………………………..15

## <u>TABLE OF AUTHORITIES</u>

**CASES**

*Alkanai v. Aegis Defense Services, LLC,*
    286 F.R.D. 67 (D.D.C. 2012)……………...…………………………………………………7

*\*Burger King v. Rudzewicz,*
    471 U.S. 462 (1985)…………………………………………………………………………9

*Cable News Network v. GOSMS.COM, Inc.,*
    2000 WL 1678039 (S.D.N.Y. 2000)……………………………………………………………8

*\*Cockrum v. Donald J. Trump for President, Inc.,*
    319 F.Supp.3d 158 (D.D.C. 2018)…………………………………………...………2, 6

*\*Daimler AG v. Bauman,*
    134 S.Ct. 746 (2014)………………………………………………………………………8

*De Sousa v. Embassy of Republic of Angola,*
    267 F.Supp.3d 136 (D.D.C. 2017)…………………………………………...12, 13

*Evans-Reid v. District of Columbia,*
    930 A.2d 930 (D.C. 2007)…………………………………………………………………14

*First Chicago Intern v. United Exchange, Co., Ltd.,*
    836 F.2d 1375 (D.C. Cir. 1988)………………………………………………...…5

*Goodyear Dunlop Tires Operations, S.A. v. Brown,*
    564 U.S. 915 (2011)……………………………………………………………7, 8

*GTE New Media Services, Inc., v. BellSouth Corp.,*
    199 F.3d 1343 (D.C. Cir. 2000)………………………………………………...7

*Homan v. Goyal,*
    711 A.2d 812 (D.C. 1998)…………………………………………………………12

*Household Credit Servs., Inc. v. Driscol*
    989 S.W.2d 72 (Tex. App. El Paso 1998)……………………………………………12

*\*Judicial Watch, Inc., v. U.S. Dept. of Commerce,*
    224 F.R.D. 261 (D.D.C. 2004)………………………………………………………2

*Keeton v. Hustler, Inc.,*
    465 U.S. 770 (1984)…………………………………………………………………7

*King v. Kidd*,
     640 A.2d 656 (D.C. 1993)……………………………………………………………12

*Kline v. Williams*,
     2006 WL 758459 (D.D.C. 2006)…………………………………..…………7, 8, 10

*Mallinckrodt Medical, Inc. v. Sonus Pharm., Inc.*,
     989 F.Supp. 265 (D.D.C. 1989)……………………………………………………..7

*Masson v. New Yorker Magazine, Inc.*,
     501 U.S. 496 (1991)………………………………………………………………..12

*Second Amendment Found. v. U.S. Conference of Mayors*,
     274 F.3d 521 (D.C. Cir. 2001)………………………………………………………9

*Swecker v. Midland Power Coop.*,
     253 F.Supp.3d 274 (D.D.C. 2017)…………………………………………………...6

*United States v. Roger J. Stone*,
     No. 1:19-cr-00018-ABJ………………………………………………………………...5

*Walden v. Fiore*,
     571 U.S. 277 (2014)…………………………………………………………………9

*Xie v. Sklover & Company, LLC*,
     260 F.Supp.3d 30 (D.D.C. 2017)……………………………………………………8

*Young v. District of Columbia*,
     322 F.Supp.3d 26 (D.D.C. 2018)……………………………....……………14

## STATUTES

28 U.S.C. § 1391(b)(2)……………………………………………………………..10

## OTHER AUTHORITIES

Restatement (Second) of Torts §§ 21, 22………………………………………………13

Roger Stone, *Mr. Roger Stone's 13th Annual International Best and Worst Dressed List*,
     The Daily Caller (Jan. 1, 2019)…………………………………………………………5

*Target in Mueller prob says he was 'bullied' by the special counsel's team*,
     Fox News (March 24, 2019)………………………………………………..11

# RULES

D.C. Code § 13-422…………………………………………………………………8

D.C. Code § 13-423…………………………………………………………………6

D.C. Code § 13-423(a)(1)……..…………………………………………………….2

D.C. Code § 13-423(a)(3)…..……………………………………………………….3

D.C. Code § 13-423(a)(4)…..……………………………………………………….3

Fed. R. Civ. P. Rule 12(b)(2)……..……………………………………………….2

Fed. R. Civ. P. Rule 12(b)(3)………..…………………………………………….9

Fed. R. Civ. P. Rule 12(b)(6)…………………………………………………….10

Fed. R. Civ. P. Rule 12(f)………………………………………………...…….3

Fed. R. Civ. P. Rule 56……………………………………………………………3

Defendant Roger Stone respectfully submits this reply in further support of his Motion to Dismiss Complaint (the "Motion to Dismiss" or "Mot.") (Dkt. # 10) and in opposition to Plaintiff Dr. Jerome Corsi's Opposition to Defendant Roger Stone's Motion to Dismiss ("Opp.") (Dkt. # 12). For the reasons stated herein as well as in Stone's Motion, Corsi's Complaint (Dkt. # 1) must be dismissed.

## **PRELIMINARY STATEMENT**

According to Plaintiff Corsi's view, Roger Stone is out to ruin his life and this lawsuit is an expression of that view. As Corsi not-so-subtly and constantly reminds the Court, Stone is facing criminal charges leveled against him by the Office of the Special Counsel. As of March 22, 2019, the day the Attorney General disclosed that there would be no further indictments from the Special Counsel, Plaintiff thought he would be indicted too. Stone has been forbidden from contacting any potential witness or even from speaking about the case publicly. Stone has not done "everything he can to smear, discredit, and threaten Corsi" (*Opp. 1*), nor has he waged a public campaign against Corsi as a means to "improperly influence and corrupt Mueller's investigation and now prosecution." (*Id.*). These allegations are completely without merit. None of the alleged defamatory statements were made after Stone was indicted; therefore, he could not have read Mueller's mind and have attempted to influence the prosecution. Moreover, any alleged statements made by Stone about Plaintiff would not influence Mueller or any of the investigators involved in Stone's pending criminal case.

Plaintiff's assertion that this Court has jurisdiction over Stone simply because decades earlier he worked and lived in Washington, D.C. is meritless. Stone has resided in the State of Florida for ***seventeen years***, since he moved there in 2002 after he ended his involvement with

his former company in 1991, ***twenty-eight years ago***. Indeed, Plaintiff put Stone's Florida address in the caption of the Complaint.

Roger Stone is not a lobbyist and any consulting work he does is based out of Florida. Additionally, it is well known that the headquarters for Donald J. Trump for President for the 2016 election was based in New York, New York, and was domiciled in Virginia, ***not*** in Washington, D.C. as mistakenly stated by Plaintiff in his Opposition on page 2. *See Cockrum v. Donald J. Trump for President, Inc.*, 319 F.Supp.3d 158, 174 (D.D.C. 2018) ("The Court lacks general jurisdiction over the Trump Campaign, which is incorporated in Virginia and has its principal place of business in New York.").

Moreover, Corsi cannot sufficiently allege a common law tort because he and Stone were never face to face. Therefore, Corsi cannot be a victim of an assault. Additionally, Stone—without any "outrageous conduct"—cannot cause emotional distress that could lead to the alleged injuries complained of in this lawsuit. Thus, the lawsuit should be dismissed not only on jurisdictional grounds, but also for failure to state a claim.

## **REPLY ARGUMENT**

I.  **The United States District Court for the District of Columbia Lacks Personal Jurisdiction over Defendant Stone Under Federal Rule of Civil Procedure 12(b)(2), the D.C. Long-Arm Statute, and Constitutional Due Process Requirements.**

To establish personal jurisdiction, the Plaintiff must satisfy both the D.C. Long-Arm Statute (D.C. Code § 13-423) and the Due Process Clause. Corsi has failed to meet this relatively low burden. Every alleged factual basis Corsi relies on in his Complaint and Opposition are simply conclusory statements or bare allegations. As counsel for Corsi is aware, affidavits or declarations can be stricken if not based upon personal knowledge or if they rely on scandalous and impertinent allegations. *See Judicial Watch, Inc., v. U.S. Dept. of Commerce*, 224 F.R.D. 261, 265 (D.D.C. 2004) (affidavits not based on personal knowledge stricken). Corsi lacks

personal knowledge of what he alleges in his declaration; he does not have personal knowledge of Stone's ties to the District of Columbia, of Stone's business activities including where it operates and where it derives its revenue, nor does he have personal knowledge of the scope and duration of Stone's career as a lobbyist. *See* Decl. ¶¶ 2-6 (Dkt. # 12-1). Furthermore, the statements contained in paragraphs 7 to 10 of Corsi's declaration fail as a matter of simple internal logic. *See id.* ¶¶ 7-19. For these reasons, the Court should strike the unsubstantiated assertions pursuant to Rules 12(f) and 56(e) of the Federal Rules of Civil Procedure.

## A. The D.C. Long-Arm Statute Has Not Been Satisfied.

Plaintiff Corsi's allegations that the D.C. Long-Arm Statute is satisfied under D.C. Code §§ 13-423(a)(1) and 13-423(a)(4) are incorrect. First and foremost, Stone does not transact business in this District. In fact, D.C. Code § 13-423(a)(1) does not even cover tort cases. Two of the D.C. Long-Arm Statute's section do apply to torts, §§ 13-423(a)(3) and (a)(4). Consequently, it is improper for Plaintiff to attempt to go around the requirements of the torts-related sections by incorrectly invoking the "transacting business clause." Secondly, he does not regularly conduct "or solicit business" in the District, "engage in any other persistent course or conduct" in the District, nor does he "derive a substantial revenue from goods used or consumed, or services rendered" in this District as required by D.C. Code § 13-423(a)(4).

Stone was never an employee of the Donald J. Trump for President campaign. He worked as an independent consultant for a relatively short period of time. And as previously noted, Trump's campaign headquarters was located in New York, New York and domiciled in Virginia, not in Washington, D.C.; therefore, there is no correlation between Stone's work on the campaign and the forum jurisdiction. Critically, working on a presidential campaign does not equate to soliciting or transacting business in Washington, D.C., nor does it equate to Stone

deriving a substantial amount of revenue from services rendered within the District as required by the Long-Arm Statute.

Stone has not worked in Washington, D.C. since at least 1991. Corsi's argument that this Court has personal jurisdiction over Stone because he worked in the District over twenty-seven years ago is legally insufficient. Plaintiff provides no case law or statutes that support this claim that because someone once worked in the forum state/district, that the state/district can continue to have personal jurisdiction over them in perpetuity. Stone works as a public affairs consultant, author, and commentator and his business is located in the state of Florida. Plaintiff also makes the assumption that because Stone worked as a lobbyist and is a "self-styled 'dirty trickster'" (*see* Opp. 4) that he must transact business in Washington, D.C. This is yet another bare allegation, not based on facts, which is conclusory at best. Not all current or former lobbyists transact business in Washington, D.C., and Plaintiff has failed to point to any business that Stone has done within D.C. within this millennium.

In regards to Corsi's claims that Stone is using "agents" or "surrogates" to defame him and this "agency" creates personal jurisdiction over Stone likewise has no merit. There are no allegations or supporting statements contained in either Corsi's Complaint or Opposition to support that Stone has actively engaged others to speak on his behalf; nor does Corsi point to a single instance of where one of these alleged "surrogates" acted on Stone's behalf. The allegations do not answer the basic question: Who were these surrogates? Where were they when the surrogates defamed, assaulted, or inflicted emotional distress on Corsi?

Corsi claims that because a reporter who works for a publication located in Washington, D.C., has potentially had contact with Stone in the past, that this is enough to satisfy the requirements of the D.C. Long-Arm Statute. This is an insufficient connection for purposes of

personal jurisdiction and has no legal or factual merit. Mr. Stone has never been an employee of the Daily Caller nor has he ever been paid by the Daily Caller.[1]

Corsi points to the "Gag Order" issued by Judge Berman Jackson on Stone as a persuasive demonstration that Stone uses henchmen to do his bidding.  However, Judge Berman Jackson made no findings of fact that Stone uses surrogates to intimidate anyone, much less surrogates to intimidate Corsi; the Gag Order is unrelated to Corsi and was initially put in place by Judge Berman Jackson to ensure a fair trial for Stone. *See* Order, *United States v. Roger J. Stone,* No. 1:19-cr-00018-ABJ (D.D.C. Feb. 15, 2019) (Dkt. # 36). Furthermore, gag orders are typically written with broad language so as to prevent parties from circumventing such orders. This claim is clearly conclusory and, therefore, not enough to establish personal jurisdiction over Stone. *See First Chicago Intern v. United Exchange, Co., Ltd.*, 836 F.2d 1375, 1378-1379 (D.C. Cir. 1988) ("It is settled a plaintiff 'must allege specific acts connecting [the] defendant with the forum,' and that the 'bare allegation' of conspiracy or ***agency*** is insufficient to establish personal jurisdiction.") (internal citations omitted and emphasis added).

The claim that because Stone is involved in an on-going criminal case within the District gives rise to personal jurisdiction in Corsi's case is simply unsupported.  Jurisdiction is alleged to be proper in the District for the criminal case because the alleged illegal activity (lying to Congress) occurred while Stone was ***physically present in the District***. Motive is not contemplated by the D.C. Long Arm-Statute as a means of establishing personal jurisdiction. *See* D.C. Code § 13-423.

---

[1] Stone occasionally writes for the Daily Caller with the editorial title of Men's Fashion Editor. *See, e.g.*, Roger  Stone, *Roger Stone's 13th Annual International Best and Worst Dressed List, https://dailycaller.com/2019/01/01/stone-best-worst-dressed/*.  However, as noted, this is done without pay and not as an employee.

In addition to incorrectly claiming that Stone satisfies the D.C. Long-Arm Statute because he transacts business in the District, Plaintiff Corsi also attempts to claim that his injuries are directly related to these alleged business activities. Corsi has made absolutely no connection between the alleged defamatory statements made by Stone to Stone's business, nor has he pleaded a connection between the business activities and his purported injuries. The supposedly defamatory statements were not alleged to have been made in Washington D.C., nor has Corsi stated that he was injured by those statements within the District: Corsi is a resident of the State of New Jersey and not of the District of Columbia.

**B. Due Process Requirements Have Not Been Satisfied.**

"To show that the exercise of jurisdiction would comply with the constitutional requirements of due process, a plaintiff must demonstrate that there are 'minimum contacts between the defendant and the forum establishing that the maintenance of the suit does not offend traditional notions of fair play and substantial justice.'" *Cockrum v. Donald J. Trump for President, Inc.,* 319 F.Supp.3d 158, 173 (D.D.C. 2018) (quoting *Swecker v. Midland Power Coop.,* 253 F.Supp.3d 274, 278 (D.D.C. 2017)) (plaintiffs failed to properly allege the District Court of the District of Columbia has personal jurisdiction over Stone). An alleged "motive" (*i.e.*, Plaintiff's assertion that all torts allegedly committed by Stone are part of a bigger conspiracy to influence Mueller's investigation and prosecution) does not establish minimum contacts as required by due process. Such an argument is completely without legal merit.

As mentioned in the preceding section, Stone does not have continuous and systematic contacts with the forum; he ended his business in the forum over twenty-eight years ago and has lived and worked out of South Florida since the early 2000s. Stone does not have minimum contacts with the forum state that would not offend traditional notions of fair play and substantial

justice. *See Alkanai v. Aegis Defense Services, LLC*, 286 F.R.D. 67, 70 (D.D.C. 2012) (holding that Due Process requires that for a claim arising outside of the forum, the non-resident defendant must have had "continuous and systematic" contacts with the forum to be subjected to jurisdiction in the forum) (quoting *Goodyear Dunlop Tires Operations, S.A. v. Brown*, 564 U.S. 915, 923 (2011)). None of the alleged conduct occurred within D.C., the alleged injury was not felt in D.C., nor was the alleged conduct directed towards D.C.

Plaintiff Corsi incorrectly attempts to use the case law from *Keeton v. Hustler, Inc.,* 465 U.S. 770 (1984), to support his claim that this Court has personal jurisdiction over Stone. Stone is not a magazine publisher, nor any kind of publisher. Stone is not publishing material that is sold or distributed nationwide nor is he a corporation. He is an individual who works as a commentator. None of the purported defamatory statements were published in print; in fact, just because an individual may access a website here where an alleged defamatory was made does not equate to personal jurisdiction. *See GTE New Media Services, Inc., v. BellSouth Corp.,* 199 F.3d 1343, 1349 (D.C. Cir. 2000) ("[P]ersonal jurisdiction surely cannot be based solely on the ability of District residents to access defendants' websites, for this does not by itself show any persistent course of conduct by the defendants in the District."). In *Kline v. Williams*, this Court found that, "[a]lthough the allegedly defamatory posts … were accessible to Internet users within the District there is nothing in her pleadings that indicates she 'suffered any injury in the District of Columbia that [she] could not have suffered in any state in the nation where someone may have read the messages and reacted negatively towards [her].'" 2006 WL 758459, at *3 (D.D.C. 2006) (quoting *Mallinckrodt Medical, Inc. v. Sonus Pharm., Inc.*, 989 F.Supp. 265, 273 (D.D.C. 1989) (finding no personal jurisdiction although a posting was accessible to a number of AOL subscribers in the District because the injury felt in the forum was indistinguishable from that felt

anywhere else subscribers lived). "In cases involving the postings of infringing material on an Internet website, courts have held that the tort occurs where the web site is created and/or maintained, usually where the server supporting the web site is located, not where the Internet website can be seen, because that would be literally anywhere the Internet can be accessed." *Id*. (quoting *Cable News Network v. GOSMS.COM, Inc.,* 2000 WL 1678039, at *3 (S.D.N.Y. 2000)).

### 1. This Court Does Not Have General Jurisdiction over Stone.

Stone is domiciled in the state of Florida. For purposes of general jurisdiction, the Court must consider where the defendant is domiciled. *See Daimler AG v. Bauman*, 571 U.S. 117, 137 (2014) ("For an individual, the paradigm forum for the exercise of general jurisdiction is the individual's domicile.") (quoting *Goodyear*, 564 U.S. at 924 (2011)). His principal place of business is also located in Florida. *See Xie v. Sklover & Company, LLC*, 260 F.Supp.3d 30, 39 (D.D.C. 2017) ("Under D.C. law, there is general jurisdiction over a defendant who is 'domiciled in, organized under the laws of, or maintaining his or its principal place of business in' the District.") (quoting D.C. Code § 13-422). Stone has no current connection to his former lobbying firm and has not been associated with the firm since 1991. This Court does not have general personal jurisdiction over Stone, nor has Plaintiff Corsi made any statements regarding general personal jurisdiction other than conclusory statements and bare allegations. Simply because Stone was involved in Trump's presidential campaign does not mean he was engaging in business in Washington, D.C. In fact, as noted in previous sections, the headquarters for the Trump Campaign were located in New York City and domiciled in Virginia and not in Washington, D.C. Corsi's jurisdiction allegations fall decidedly flat in light of this fact.

## 2.  This Court Does Not Have Specific Jurisdiction over Stone.

Critically, Plaintiff fails to analyze some of the most important cases involving specific jurisdiction. "The inquiry whether a forum State may assert specific jurisdiction over a nonresident defendant focuses on the relationship among the defendant, the forum, and the litigation."[2] *Walden v. Fiore*, 51 U.S. at 284-285 (citations omitted) (internal quotation marks omitted). A court has specific jurisdiction only if (1) the defendant has "purposefully established minimum contacts" with the forum by "purposefully direct[ing]" his activities there and (2) the plaintiff's claims "arise out of or relate to" those activities. *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 473-474 (1985). Plaintiff must allege specific acts connecting a defendant to the forum. *See Second Amendment Found. v. U.S. Conference of Mayors,* 274 F.3d 521, 525 (D.C. Cir. 2001). The allegation that Stone has "defamed, threatened, and discredited" Corsi (*see* Opp. 7), because Stone is allegedly trying to influence the Mueller investigation is insufficient[3]. Plaintiff cannot assert a claim for something that the defendant could not do. Corsi claims that all of these actions stem from Stone's attempts "to try to improperly influence and corrupt Mueller's investigation and now prosecution." Opp. 1. Corsi has failed to allege a single instance where Stone engaged in such behavior. There is absolutely nothing in the Complaint that supports this theory of Stone actively trying to use his access to partisan or fringe media outlets to undermine the Mueller investigation and prosecution.

## II.  The United States District Court for the District of Columbia Is An Improper Venue for This Lawsuit Pursuant to Federal Rule of Civil Procedure 12(b)(3).

---

[2] A "defendant's relationship with a plaintiff or third-party, standing alone, is an insufficient basis for jurisdiction." *Walden v. Fiore*, 571 U.S. 277, 286 (2014). "Due process requires that a defendant be hauled into court in a forum State based on his own affiliation with the State, not based on the 'random, fortuitous, or attenuated' contacts he makes by interacting with other persons affiliated with the State." *Id.* (quoting *Burger King v. Rudzewicz*, 471 U.S. 462, 475 (1985)).

The District of Columbia is not the proper venue for this case. Corsi claims that all of Stone's actions were aimed at influencing the Mueller investigation and, because that criminal prosecution is located within this District, venue is proper. This logic does not follow. No substantial part of the "events or omissions giving rise to the claim" occurred in Washington, D.C.; none of the alleged statements made by Stone were made in Washington, D.C., nor were they made to individuals within the District. *See* 28 U.S.C. § 1391(b)(2). Corsi does not allege that any witnesses reside or allegations actually occurred within this District. *See Kline v. Williams*, 2006 WL 758459, at *2 (D.D.C. 2006). ("[M]ere allegation that the conduct in question occurred via the Internet, without more, is insufficient to satisfy the jurisdictional limitations imposed by District law and the federal Constitution.").

Corsi incorrectly tries to establish that venue is proper "by virtue of [the allegedly defamatory statements] available on the internet [sic]. They were therefore widely projected into and thus available for viewing and consumption in his [sic] judicial district." (*See* Opp. 8). This has nothing to do with venue and relates to personal jurisdiction. In fact, this proposition has been contradicted by the United States District Court on numerous occasions as discussed in the proper section relating to the D.C. Long-Arm Statute above.

## III. Plaintiff Fails to State a Claim Upon Which Relief Can Be Granted Pursuant to Federal Rule of Civil Procedure 12(b)(6).

### A. Failure to State a Claim as to Defamation, Defamation *Per Se*, and Defamation by Implication (Counts I, II, and III).[4]

---

[4] The Court should be made aware that a number of the links provided in Plaintiff's Complaint, for the videos of Stone's allegedly defamatory statements do not in fact work. As part of Counsel's ongoing duty of due diligence, Stone's counsel attempted to find these videos and statements and with the exception of one link, was unable to find the actual sources for the allegations made by Plaintiff.

Contrary to his claims, Corsi is a limited purpose figure. In fact, he is arguably a public figure given his notoriety and willingness to express his views regularly using a variety of media sources such as web interviews, television, interviews, books, news articles, etc. Corsi is most certainly a limited-public figure in this case. He went out of his way to publicly insert himself into this controversy by speaking to the media and make Stone a scapegoat as a means to defend himself. In this context, Corsi has made false statements against Stone.

Corsi's entire argument for personal jurisdiction stems from his claims that the alleged defamatory statements were done to improperly influence Mueller's investigation and prosecution, but Corsi himself notes how some of the comment made by Stone "are not germane in any way to the Russian collusion investigation and prosecution." (*See* Opp. 11).   He, thus, rebuts his own argument:   if these comments are directed at influencing the investigation in Washington, D.C., which is what Corsi is claiming, how can they influence the investigation or prosecution if they are irrelevant as Corsi admits?

Corsi repeats a number of the allegedly defamatory statements made by Stone in pages 12 to 13 of his Opposition.  Stone is entitled to make statements that he believes to be true.  Stone has had interactions with Corsi that has reasonably led him to believe in Corsi's overindulgence in consuming alcohol.  It appears that since Corsi was subject to the "psychological torment"[5] of the Special Counsel, his account now differs from that of Stone's regarding the events surrounding the Podesta dossier he produced for Stone, the Podesta emails, and WikiLeaks. Conflicting opinions do not equate to defamation.  Subject to the Gag Order in place, Stone is entitled to put his version of the story out, just like Corsi has done and to let people make a decision as to who's story they believe.  At the time these statements were made, Mueller's

---

[5] *Target in Mueller probe says he was "bullied" by the special counsel's team,* Fox News (March 24, 2019) https://video.foxnews.com/v/6017440895001/#sp=show-clips at 3:22.

investigation was on-going and Stone believed that, according to Corsi's own words, he was likely to be indicted for perjury. He has only ever expressed his version of events and given his opinion as to what he believes is true. This does not amount to a reckless disregard for the truth or any indication that Stone acted with malice when making these statements about Corsi. "[T]he plaintiff must demonstrate that the author 'in fact entertained serious doubts as to the truth of his publication,' or acted with a 'high degree of awareness of … probable falsity.'" *Masson v. New Yorker Magazine, Inc.,* 501 U.S. 496, 510 (1991) (citations omitted). Corsi has not done this.

**B. Failure to State a Claim for Intentional Infliction of Emotional Distress (Count IV).**

Corsi alleges, "Defendant Stone knowingly and intentionally threatened Plaintiff Corsi, in a manner similar to other death threats he made to at least one material witness." Complaint ¶ 50. Corsi claims that Stone's statement, "I look forward to our confrontation. I will demolish you" is a threat sufficient to sustain a claim for intentional infliction of emotional distress. This is insufficient. This is not a physical threat, nor is it a death threat. Moreover, Corsi has failed to show how this statement is similar to one Stone allegedly made to a *different* person completely *unrelated* to this action. Ironically, although Corsi states that "courts have held that a single threat of physical harm or death can sustain a claim for intentional infliction of emotional distress," he proceeds to quote and cite to cases that say the exact opposite. *See* Opp. 15.[6] "'[I]nsults, indignities, [and] threats,'" without more, do not constitute intentional infliction of

---

[6] *See Homan v. Goyal*, 711 A.2d 812 (D.C. 1998) (finding of intentional infliction of emotional distress because there were *repeated **death** threats* and physical confrontations between the parties) (emphasis added); *Household Credit Servs., Inc. v. Driscol* 989 S.W.2d 72, 82 (Tex. App. El Paso 1998) ("With the possible exceptions of the bomb and death threats, no single action of [party], *including name calling*, foul language, any single ill-timed phone call, multiple calls at home on any single day, repeated calls to [plaintiff's] place of employment after she asked them to stop, or *even the threat to make [plaintiff's] life miserable*, rises to the level of intentional infliction of emotional distress) (emphasis added).

emotional distress. *De Sousa v. Embassy of Republic of Angola*, 267 F.Supp.3d 136, 172 (D.D.C. 2017) (quoting *King v. Kidd*, 640 A.2d 656, 668 (D.C. 1993)). Moreover, "[t]hreats themselves do not constitute extreme and outrageous conduct," an element required for intentional infliction of emotional distress. *Id.* at 173. Corsi's allegations of intentional infliction of emotional distress have no merit and his allegations are bare and conclusory. It is sadly farcical at best to allege that the statements supposedly made by Stone were made as an attempt to give Corsi a heart attack or stroke as claimed in paragraph 10 of Plaintiff's Complaint. In addition to previously stated arguments, Corsi's claim of emotional distress against Stone also fails because he blames Robert Muller for his emotional distress due to the Special Counsel's "bullying" and "psychological torment."[7] [8] There is nothing pled in the Complaint or in the Opposition that would lend any support to such a claim.

### C. Failure to State a Claim as to Assault (Count V).

Corsi fails to provide any factual support to his claim of assault against Stone. Corsi attempts to persuade this Court that because Stone allegedly made threats to another individual and the individual's *dog* without actually stating the threats. Corsi's claim is beyond conclusory, and the allegation is more than lacking in factual basis, not even allowing the Court to make a reasonable inference of liability. As mentioned in the Motion to Dismiss, Corsi's attempt to rely on Stone's alleged interest in Mafia culture and history and his history of working for President Nixon as factual support that Stone assaulted Corsi is patently ridiculous. Corsi also incorrectly

---

[7] *Target in Mueller prob says he was "bullied" by the special counsel's team,* Fox News (March 24, 2019) https://video.foxnews.com/v/6017440895001/#sp=show-clips

[8] It should also be noted that Corsi has written and published a book describing the 'emotional distress' that Mueller and his investigation caused Corsi. (Jerome R. Corsi, <u>Silent No More: How I became a Political Prisoner of Mueller's "Witch Hunt,"</u> available at https://www.amazon.com/Silent-No-More-Political-Prisoner-ebook/dp/B07LB9HT2F/ref=sr_1_1?qid=1553701343&refinements=p_27%3AJerome+R.+Corsi+Ph.D.&s=books&sr=1-1&text=Jerome+R.+Corsi+Ph.D).

claims that Stone made a threat against Judge Berman-Jackson who is overseeing his criminal case. This is outright false, and Judge Berman-Jackson did not make any legal findings of fact relating to an alleged threat; furthermore, Stone vehemently denied making such a threat and remains free on a personal surety bond. Corsi yet again misunderstands Judge Berman-Jackson's Gag Order as related to Stone's purported use of surrogates. This allegation is conclusory, and Corsi fails to give any factual support that Stone has used a surrogate to assault Corsi.

Assault requires an individual to be placed in "apprehension of an immediate and harmful or offensive conduct." *See Restatement (Second) of Torts* §§ 21, 22 (1965). If Plaintiff is located in the State of New Jersey and Stone is located in the State of Florida, there can be no apprehension of anything *immediate*. Furthermore, Plaintiff has failed to provide any facts to support the notion that Stone threatened to do physical harm to him. *See Young v. District of Columbia*, 322 F.Supp.3d 26, 41 (D.D.C. 2018) (quoting *Evans-Reid v. District of Columbia*, 930 A.2d 930, 937 (D.C. 2007)) ("Under District of Columbia law, '[a]n assault is an intentional and unlawful attempt or threat, either by words or by acts, to do physical harm to the victim''). This necessarily contemplates a close physical proximity between plaintiff and defendant, which is clearly not present here.

## **CONCLUSION**

The Court should dismiss the complaint for lack of personal jurisdiction and improper venue. Alternatively, it should dismiss the complaint for failure to state a claim.

Dated: March 27, 2019                    Respectfully submitted,

                                         */s/ Robert Buschel*_____

L. Peter Farkas
(DDC Bar No. 52944)
HALLORAN FARKAS + KITTILA LLP
1101 30TH STREET, NW
SUITE 500
WASHINGTON, DC 20007
(202) 559-1700
PF@HFK.LAW

Robert C. Buschel
*admitted pro hac vice*
(FL Bar No. 0063436)
BUSCHEL GIBBONS , P.A.
ONE FINANCIAL PLAZA – SUITE 1300
100 S.E. THIRD AVENUE
FORT LAUDERDALE, FL 33394
(954) 530-5301
BUSCHEL@BGLAW-PA.COM

## CERTIFICATE OF SERVICE

I certify that on March 27, 2019, I electronically filed the foregoing with the Clerk of Court using the CM/ECF system, which will send a notice of electronic filing to all registered parties.

*/s/ Robert Buschel*
Robert C. Buschel
*Counsel for Roger Stone*